NOTICE

Decision filed 03/04/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NOS. 5-09-0071 & 5-09-0072

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| NANCY J. HOWELL, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff, | ) Williamson County. |
| | ) |
| v. | ) No. 07-L-123 |
| | ) |
| JESSICA J. DUNAWAY, | ) |
| | ) |
| Defendant | ) |
| | ) |
| (Nancy J. Howell, Petitioner-Appellee, v. | ) Honorable |
| Southern Illinois Hospital Services, d/b/a | ) John Speroni, |
| Herrin Hospital, Respondent-Appellant). | ) Judge, presiding. |

_____

| | |
|---|---|
| SHERRY D. WENDLING, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff, | ) Williamson County. |
| | ) |
| v. | ) No. 06-LM-121 |
| | ) |
| BOBBY E. WOOLARD, | ) |
| | ) |
| Defendant | ) |
| | ) |
| (Sherry D. Wendling, Petitioner-Appellee, v. | ) |
| Southern Illinois Hospital Services, d/b/a | ) Honorable |
| St. Joseph Memorial Hospital and Memorial | ) Brad K. Bleyer, |
| Hospital of Carbondale, Respondent-Appellant).) | Judge, presiding. |

_____

JUSTICE WELCH delivered the opinion of the court:

These two cases have been consolidated for decision because they present a common question of law: whether a hospital's statutory lien for services rendered to an injured plaintiff, filed pursuant to the Health Care Services Lien Act (770 ILCS 23/1 *et seq.* (West 2008)), is subject to a reduction under the common-fund doctrine for attorney fees incurred

1

by the injured plaintiff in obtaining recovery against the individual liable for the injuries. Because no disputed questions of fact are presented and the issue is strictly a matter of law, our review is *de novo*. *Von Meeteren v. Sell-Sold, Ltd.*, 274 Ill. App. 3d 993, 996 (1995).

The Health Care Services Lien Act (the Act) creates a lien on behalf of every health care professional and health care provider that renders any service on behalf of an injured person upon all the claims and causes of action of that injured person; the lien is in the amount of the reasonable charges. 770 ILCS 23/10 (West 2008). The lien attaches to any verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person on his claim or cause of action. 770 ILCS 23/20 (West 2008). On the petition of any interested party, the circuit court shall adjudicate the rights of all the interested parties and enforce the lien. 770 ILCS 23/30 (West 2008). The Act further provides that it shall not be construed as limiting the right of the health care professional or provider to pursue collection, through all the available means, of its reasonable charges or of the amount of its reasonable charges that remain not paid after the satisfaction of its lien under the Act. 770 ILCS 23/45 (West 2008).

Both the plaintiffs were injured in motor vehicle accidents and were treated in one or more of the respondent hospitals. They filed personal injury lawsuits against the drivers of the motor vehicles that injured them. The hospitals filed liens against any recovery in these personal injury actions pursuant to the Act. Both of the personal injury suits were settled, with the plaintiffs recovering damages. The plaintiffs then filed petitions under section 30 of the Act (770 ILCS 23/30 (West 2008)) to adjudicate these liens, seeking to apply the common-fund doctrine to reduce the amount of the liens by one-third for attorney fees incurred by the plaintiffs in their personal injury lawsuits. The circuit court granted the petitions, applying the common-fund doctrine for the first time to a lien filed pursuant to the Act. The hospitals appeal.

As a general rule, the right of an attorney to recover for professional services must rest on the terms of a contract of employment with the person sought to be charged and cannot be based on a benefit derived by a third party from the services rendered by the attorney. *Maynard v. Parker*, 54 Ill. App. 3d 141, 143 (1977), *aff'd*, 75 Ill. 2d 73 (1979). Further, the client who engaged the attorney and paid his fees is not entitled to recover a proportionate share of the attorney fees from those who receive a benefit from the services. *Maynard*, 54 Ill. App. 3d at 143. The common-fund doctrine is an exception to these general rules. *Maynard*, 54 Ill. App. 3d at 143.

The common-fund doctrine is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all of those who seek to benefit from it. *Maynard*, 54 Ill. App. 3d at 143. The doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched. *Bishop v. Burgard*, 198 Ill. 2d 495, 509 (2002). The policy behind the common-fund doctrine is to prevent those who benefit from a fund without contributing to the cost of its creation from "freeloading." *Bishop*, 198 Ill. 2d at 510. Accordingly, the common-fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996). Thus, it is now well-established that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney fee from the fund as a whole. *Scholtens*, 173 Ill. 2d at 385. The doctrine has found its expression in statutes and has been accorded public policy status by judicial decision. See *Bishop*, 198 Ill. 2d at 509.

To sustain a claim under the common-fund doctrine, the attorney must show that (1) the fund was created as the result of legal services performed by the attorney, (2) the claimant

did not participate in the creation of the fund, and (3) the claimant benefited or will benefit from the fund that was created. *Bishop*, 198 Ill. 2d at 508.

In the cases before us, the circuit courts found that these three elements had been proven. The settlement funds had been created as a result of the legal services performed by the plaintiffs' attorneys, the lienholders who were making claims against the settlement funds did not participate in the creation of the funds, and the lienholders would benefit from the funds that were created. The circuit courts found that the lienholders would be unjustly enriched if they received a benefit from the settlement funds without contributing to the costs of the associated legal services. Accordingly, the circuit courts granted the plaintiffs' requests for the payment of attorney fees under the common-fund doctrine.

The hospitals argue, however, that pursuant to the supreme court's decision in *Maynard v. Parker*, 75 Ill. 2d 73, 75-76 (1979), the common-fund doctrine does not apply to hospital liens under the Act. The facts of *Maynard* are nearly identical to those in the case at bar. The plaintiff had been injured in an automobile accident and was treated at a hospital, which filed a lien pursuant to the Act against any proceeds from the plaintiff's action against the tortfeasor who had injured him. The underlying personal injury lawsuit was settled in favor of the plaintiff, and on a petition to adjudicate the lien, the plaintiff's attorney sought attorney fees from the hospital pursuant to the common-fund doctrine. The circuit court awarded attorney fees under the doctrine and the appellate court reversed. The supreme court affirmed the judgment of the appellate court.

In its opinion, the supreme court held that the common-fund doctrine does not apply to the debtor/creditor relationship between the injured plaintiff and the hospital, or to the lien created by the Act, but applies only to a traditional subrogor/subrogee relationship where the *obligation* to pay arises only from the plaintiff's recovery against a third party, that is, out of the creation of the fund. *Maynard*, 75 Ill. 2d at 75. The court pointed out that in a

4

subrogor/subrogee relationship, the plaintiff is required to repay the sum advanced only in the event and to the extent that any recovery is made from a third party. *Maynard*, 75 Ill. 2d at 75. In that situation, the recovery is itself dependent on the creation of the fund. *Maynard*, 75 Ill. 2d at 75.

The supreme court distinguished the debtor/creditor relationship between an injured plaintiff and a hospital having a lien under the Act:

"Here, plaintiff's liability to the hospital was not dependent upon the creation of a fund; plaintiff was a debtor obligated to pay for the services rendered by the hospital out of any resources which might become available to him." *Maynard*, 75 Ill. 2d at 75.

Accordingly, the supreme court held that the common-fund doctrine does not apply to a lienholding hospital enforcing its lien against the fund.

The circuit courts in the case at bar were aware of the *Maynard* decision and considered it, but they concluded that the supreme court had in a more recent case, *Bishop v. Burgard*, 198 Ill. 2d 495 (2002), expanded the common-fund doctrine to include a debtor/creditor relationship such as the one at bar. In *Bishop*, the plaintiff had incurred medical expenses as a result of injuries sustained in an automobile accident. The plaintiff was a participant in her employer's ERISA plan (the plan), which paid the plaintiff's medical expenses. The plaintiff brought suit against the tortfeasor who had injured her, and the suit was settled in favor of the plaintiff. The plaintiff filed a motion asking that the court apply the common-fund doctrine to reduce the amount claimed by the plan from the settlement fund, reflecting a proportionate reduction for attorney fees and costs incurred in the personal injury action for the plan's share of the recovery. The circuit court granted the motion, and the appellate court reversed.

The supreme court reversed the judgment of the appellate court and affirmed that of

the circuit court, holding that the common-fund doctrine did apply to the plan. While the relationship between the plaintiff and the plan was one of subrogor/subrogee, and not one of debtor/creditor, the supreme court used the following broad language:

"But for [the plaintiff's] action, and the efforts of her attorney, there would have been no fund from which the plan could have obtained reimbursement. For purposes of applying the common fund doctrine, it is irrelevant that the party who benefits from a lawyer's services has a *right* to compensation, be it an undifferentiated right of reimbursement or subrogation[,] as is asserted here, or a right to compensation under some other theory. Obviously, everyone who brings a legal action is asserting some claim of right. However, a mere right may amount to nothing more than a possibility unless it is properly asserted. That is the point. The real question is whether the plan obtained the benefit of a lawsuit without contributing to its costs. [Citation.] If so, it was unjustly enriched for purposes of applying the common fund doctrine. *** 'If the costs of litigation are not spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts.' [Citation.]" (Emphasis in original.) *Bishop*, 198 Ill. 2d at 510.

One of the judges in the case at bar stated as follows:

"In my opinion the *** holding in *Bishop* expands the application of the common fund doctrine beyond that expressed in its earlier *Maynard* decision. In this case, the 'Hospitals' [*sic*] potential independent claims against the plaintiff were only legal rights representing the possibility of recovery unless, and until, properly asserted. The 'Hospitals' clearly benefitted from plaintiff's lawsuit. The costs of this litigation should be shared by all beneficiaries. In my opinion, based on *Bishop*, the common fund doctrine applies."

We agree with the circuit court that by the language it used in *Bishop*, the supreme

6

court intended to, and did, expand the application of the common-fund doctrine beyond that expressed in its earlier *Maynard* decision to include not only the traditional subrogor/subrogee relationship but also the relationship between an injured plaintiff and a lienholder hospital. We believe that by its use of this language, the supreme court intended to, and did, shift the focus away from the relationship between the parties and toward what it called the "real question" of whether the claimant benefited from the lawsuit without contributing to its costs, thereby becoming unjustly unenriched. *Bishop*, 198 Ill. 2d at 510. That approach is consistent with fundamental fairness and with the equitable basis of the common-fund doctrine and its public policy principles. Furthermore, we believe that this expansion of the common-fund doctrine to include lienholders under the Act makes eminently good sense and is supported by logic, case law, and public policy.

In *Maynard*, the supreme court made a distinction between the subrogor/subrogee relationship and the debtor/creditor relationship on the basis that in the subrogation context there is a direct relationship between the obligation to pay and the creation of the fund, whereas in the debtor/creditor context the obligation to pay exists independently of the creation of the fund. The debtor is obligated to pay even without the creation of the fund, whereas the subrogor is obligated to pay only if and to the extent the fund is created. Thus, in a subrogation context, the benefit to the subrogee is a direct benefit from the creation of the fund, whereas in the debtor/creditor context, the benefit to the creditor from the creation of the fund is merely incidental. As the appellate court explained in *Maynard*, 54 Ill. App. 3d at 145, "[T]he benefit to the hospital resulting from [the attorney's] services was merely incidental to the primary purpose of obtaining compensation for plaintiff's injuries."

We note, however, that while a debtor/creditor relationship does exist between the plaintiffs and the hospitals, in the context of the action before us the relationship is more than just that of debtor/creditor. The relationship is that of debtor/*lienholder*, and the context of

7

the action appealed from is the enforcement of the lien, not the collection of a debt. Furthermore, the lien exists only by virtue of the creation of the fund, and the right to enforce it is a direct benefit of the creation of that fund. Indeed, as the circuit court found, the lien is worthless unless and until, through the expenditure of funds and effort by the plaintiff's attorney, the claim is successfully asserted to completion. The lien will only be paid if the injured party incurs the cost to effectuate a settlement or judgment. The hospital may not stand in the plaintiff's shoes as a subrogee, but it is entirely dependent upon the plaintiff's attorney to create the fund against which to enforce its lien.

Accordingly, we conclude that the relationship between the plaintiffs and the lienholder hospitals in the case at bar is much more similar to a subrogor/subrogee relationship and less like a debtor/creditor relationship than the court in *Maynard* recognized. While the hospital's right to payment may not be dependent on the creation of the fund, its statutory lien is in fact dependent on the creation of the fund, for the lien specifically and expressly attaches only to the common fund. 770 ILCS 23/20 (West 2008). The lien does not attach to all the assets or resources of the debtor/plaintiff, but only to the plaintiff's recovery against a third party, that is, the common fund. This is the critical distinction that renders the lienholder hospital similar to a subrogee for purposes of the application of the common-fund doctrine.

The action before us is not one to collect a debt, but one to enforce a statutory lien, a lien that expressly applies only to the common fund. Thus, the enforcement of the lien is itself dependent on the creation of the fund. The lien can be enforced " 'only in the event and to the extent that any *** recovery is made' " from a third party. *Maynard*, 75 Ill. 2d at 75 (quoting *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 122 (1977)).

The hospital is not a mere creditor, such as a furniture store that is seeking to recover a debt from funds recovered by the debtor from an unrelated lawsuit. See *Maynard*, 54 Ill.

8

App. 3d at 145. The hospital's lien specifically attaches only to the settlement funds that are recovered by the debtor in a suit to recover damages for the very injuries which gave rise to the hospital's debt.

The real question as set forth in *Bishop*, 198 Ill. 2d at 510, is not whether the hospitals are lienholders or subrogees but whether the hospitals have been so benefited by the plaintiffs' attorneys who rendered services in obtaining settlements that the attorneys should in equity be allowed their compensation out of the common fund. If the costs of litigation are not spread to the beneficiaries of the fund, they will be unjustly enriched by the attorneys' efforts. *Bishop*, 198 Ill. 2d at 510. This is precisely the sort of "freeloading" the common-fund doctrine was designed to prevent. *Bishop*, 198 Ill. 2d at 510. By seeking payment from the fund in reliance on the lien, the hospitals directly received the benefits of the work done by the plaintiffs' attorneys. This is not an incidental benefit of the creation of the fund but a direct benefit. Because of this, it would be fundamentally unfair to allow a hospital to collect on its lien without paying its prorated share of the legal expenses.

Furthermore, without the creation of the fund against which to enforce its lien, a hospital would have to use its own legal resources to recover the monies due to it. If the plaintiff's attorney secures a judgment or settlement, the hospital recovers its funds without expending its own legal resources. If we did not allow a division of legal costs, hospitals would be encouraged to sit back and reap the rewards of another's labor at that party's expense. We do not believe that is consistent with public policy.

Finally, if a health care professional or provider does not want to be responsible for its proportionate share of costs and attorney fees expended in creating the common fund, it simply need refrain from asserting its statutory lien against the common fund. As the Act expressly provides, the professional or provider may still use all the other available means to collect the debt owed to it by the injured plaintiffs. 770 ILCS 23/45 (West 2008). But if

9

the professional or provider seeks to collect the debt owed to it out of the common fund created by the plaintiffs and their attorneys, the common-fund doctrine applies and it is responsible for its proportionate share of attorney fees and costs.

Finally, the hospitals argue that to apply the common-fund doctrine to the hospitals' recovery creates a conflict of interest between the plaintiffs and their attorneys which will result in the plaintiffs owing more money to the lienholders. The hospitals argue that any amounts paid to the attorneys out of the lienholders' recovery will simply have to be paid at a later date by the plaintiffs. However, we find this to be a question for a later day and not ripe for review. The amount owed by the plaintiffs to the hospitals is not before us in this case. The only question before us in the case at bar is whether the common-fund doctrine applies to the hospitals' liens. We have answered that question in the affirmative.

For the foregoing reasons, the orders of the circuit court of Williamson County are hereby affirmed.


Affirmed.


GOLDENHERSH, P.J., and SPOMER, J., concur.

| | | |
|---|---|---|
| NANCY J. HOWELL, | ) | Appeal from the Circuit Court of Williamson County. |
| Plaintiff, | ) | |
| v. | ) | No. 07-L-123 |
| JESSICA J. DUNAWAY, | ) | |
| Defendant | ) | |
| (Nancy J. Howell, Petitioner-Appellee, v. Southern Illinois Hospital Services, d/b/a Herrin Hospital, Respondent-Appellant). | ) | Honorable John Speroni, Judge, presiding. |

_____

| | | |
|---|---|---|
| SHERRY D. WENDLING, | ) | Appeal from the Circuit Court of Williamson County. |
| Plaintiff, | ) | |
| v. | ) | No. 06-LM-121 |
| BOBBY E. WOOLARD, | ) | |
| Defendant | ) | |
| (Sherry D. Wendling, Petitioner-Appellee, v. Southern Illinois Hospital Services, d/b/a St. Joseph Memorial Hospital and Memorial Hospital of Carbondale, Respondent-Appellant).) | ) | Honorable Brad K. Bleyer, Judge, presiding. |

**Opinion Filed**:       March 4, 2010

| | |
|---|---|
| **Justices**: | Honorable Thomas M. Welch, J. |
| | Honorable Richard P. Goldenhersh, P.J., and Honorable Stephen L. Spomer, J., Concur |

| | |
|---|---|
| **Attorneys for Appellants** | Michael F. Dahlen, Feirich/Mager/Green/Ryan, 2001 West Main Street, P.O. Box 1570, Carbondale, IL 62903; John R. Daly, P.O. Box 3988, Carbondale, IL 62902-3988 (for Southern Illinois Hospital Services, d/b/a Herrin Hospital, St. Joseph Memorial Hospital, and Memorial Hospital of Carbondale) |

| | |
|---|---|
| **Attorneys for Appellees** | Neal Heflin, Heflin Law Firm, 820 Karnes Road, Galatia, IL 62935 (for Nancy J. Howell); John D. Foley, P.O. Box 685, Anna, IL 62906 (for Sherry D. Wendling) |