Docket Nos. 110199, 110200 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

SHERRY D. WENDLING, Appellee, v. SOUTHERN ILLINOIS HOSPITAL SERVICES, d/b/a St. Joseph Memorial Hospital and Memorial Hospital of Carbondale, Appellant.–NANCY J. HOWELL, Appellee, v. SOUTHERN ILLINOIS HOSPITAL SERVICES, d/b/a Herrin Hospital, Appellant.

*Opinion filed March 24, 2011.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, and Theis concurred in the judgment and opinion.

Chief Justice Kilbride and Justice Karmeier took no part in the decision.

## OPINION

The plaintiffs in these consolidated cases were injured in automobile accidents and subsequently filed personal injury lawsuits against the drivers responsible for their injuries. The hospitals who treated the plaintiffs asserted liens against the proceeds of the lawsuits, pursuant to the Health Care Services Lien Act (770 ILCS 23/1 *et seq*. (West 2008)). The circuit court held, based on the "common fund doctrine," that the lien-holding hospitals were

responsible for their proportionate share of the plaintiffs' attorney fees. The appellate court affirmed. 398 Ill. App. 3d 1078. We reverse and hold that the common fund doctrine is not applicable to health care liens under the Act.

Background

The Health Care Services Lien Act provides that a health care professional or provider who renders treatment to an injured plaintiff "shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges." 770 ILCS 23/10(a) (West 2008). The total amount of all health care liens filed with respect to an individual plaintiff is limited to 40% of the judgment or settlement. 770 ILCS 23/10(a) (West 2008). Health care professionals and providers have the right to seek payment of the amount of their reasonable charges that remain not paid after the satisfaction of their liens under the Act. 770 ILCS 23/45 (West 2008). Where the total liens filed under the Act amount to 40% of the judgment or settlement, the total amount of attorneys' liens under the Attorneys Lien Act (770 ILCS 5/0.01 *et seq.* (West 2008)) is limited to 30% of the judgment or settlement. 770 ILCS 23/10(c)(2) (West 2008). The statute is silent as to whether a health care professional or provider holding a lien under the Act is responsible for attorney fees pursuant to the common fund doctrine.

Plaintiffs Sherry D. Wendling and Nancy J. Howell were injured in separate automobile accidents and treated at hospitals owned by Southern Illinois Hospital Services (Hospitals). The Hospitals filed statutory liens pursuant to the Health Care Services Lien Act (770 ILCS 23/1 *et seq.* (West 2008)) against the proceeds of the plaintiffs' lawsuits against their tortfeasors.

Both plaintiffs reached settlement agreements with the individual defendants and filed petitions to adjudicate the Hospitals' liens. The petitions alleged that, under the common fund doctrine, plaintiffs' counsel were entitled to additional attorney fees equal to one-third of the amount of the Hospitals' liens.

The circuit court granted the petitions, finding that plaintiffs' attorneys were entitled to 30% of the total settlement proceeds, plus one-third of the amount of the Hospitals' liens. Accordingly, the court

ordered that the Hospitals have their share of the settlement proceeds reduced by one-third, to reflect their share of the legal fees incurred by plaintiffs. The Hospitals appealed.

The appellate court affirmed. 398 Ill. App. 3d 1078. The court held that the Hospitals directly benefitted from the work done by plaintiffs' attorneys in creating the fund and, thus, were responsible for their prorated share of the plaintiffs' legal expenses. *Id.* at 1085. We allowed the Hospitals' petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)). We granted leave to the County of Cook and the Illinois Trial Lawyers Association to submit *amicus curiae* briefs in support of the Hospitals and the plaintiffs, respectively.


Analysis

The common fund doctrine is an exception to the general American rule that, absent a statutory provision or an agreement between the parties, each party to litigation bears its own attorney fees and may not recover those fees from an adversary. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572 (2000). The doctrine provides that " 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' " *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Underlying the doctrine is the equitable concept that the beneficiaries of a fund will be unjustly enriched by the attorney's services unless they contribute to the costs of the litigation. *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 124 (1977); *Scholtens*, 173 Ill. 2d at 385. Courts have applied the common fund doctrine in numerous types of civil litigation, including insurance subrogation claims, class actions, and wrongful-death cases involving an intervenor. *Kitzman*, 193 Ill. 2d at 573; *Scholtens*, 173 Ill. 2d at 388.

Illinois courts have never applied the common fund doctrine to a creditor-debtor relationship, such as the one between the Hospitals and the plaintiffs in the instant case. In fact, in *Maynard v. Parker*, 75 Ill. 2d 73 (1979), this court expressly held that the doctrine was inapplicable to a hospital holding a statutory lien. The relevant facts in *Maynard* are identical to those presented here. The treating hospital

-3-

filed a lien pursuant to the Hospital Liens Act (Ill. Rev. Stat. 1975, ch. 82, par. 97 *et seq.*), for the amount of the plaintiff's hospital bills. *Maynard*, 75 Ill. 2d at 74. After settling his lawsuit against the tortfeasor, the plaintiff filed a petition to adjudicate the rights of the parties. The circuit court ordered the hospital to pay plaintiff's attorney one-third of the amount claimed in its lien. The appellate court reversed, holding that the hospital was not responsible for paying a portion of the plaintiff's attorney fees. This court affirmed the appellate court. *Id.* at 75-76. In contrast to other "common fund" cases, where the beneficiaries of the fund would not be paid absent the creation of the fund, the hospital's recovery of its charges did not depend on the creation of the fund. "[P]laintiff was a debtor obligated to pay for the services rendered by the hospital out of any resources which might become available to him." *Id.* at 75. Stated another way by the appellate court in *Maynard*:

> "[T]he benefit to the hospital resulting from [the attorney's] services was merely incidental to the primary purpose of obtaining compensation for plaintiff's injuries.*** We cannot justify extending the common fund doctrine to require a mortgagee or a furniture store or any other creditor of a plaintiff to contribute to the fees of the plaintiff's attorney if the funds recovered by litigation are used to satisfy the plaintiff's obligations." *Maynard v. Parker*, 54 Ill. App. 3d 141, 145 (1977), *aff'd*, 75 Ill. 2d 73 (1979).

This court further noted that, unlike other common fund cases, the amount of the hospital's lien was limited by statute to a certain percentage of the plaintiff's recovery. *Maynard*, 75 Ill. 2d at 75. Under those circumstances, the hospital was not unjustly enriched by the attorney's services, and, thus, was not required to contribute to the costs of litigation. *Id.* at 75.

To the extent that the plaintiffs request this court to overturn our decision in *Maynard*, we decline to do so. Plaintiffs present no compelling reason to depart from our long-standing precedent, which, until the appellate court's decision in the instant case, has been consistently followed by Illinois courts. See *Watkins v. GMAC Financial Services*, 337 Ill. App. 3d 58, 65 (2003); *Village of Clarendon Hills v. Mulder*, 278 Ill. App. 3d 727, 733-34 (1996); *Wheaton v. Department of Public Aid*, 92 Ill. App. 3d 1084, 1086

(1981). Moreover, we note that the majority of other states to decide this issue are in agreement that a hospital is not required to pay its share of attorney fees incurred in creating a fund from which the hospital's lien is paid. See Robert L. Rossi, Attorneys' Fees, 3d §7:20 (2002); Carol A. Crocca, Annotation, *Construction, operation, and effect of statute giving hospital lien against recovery from tortfeasor causing patient's injuries*, 16 A.L.R.5th 262 (1993); *Mitchell v. Huntsville Hospital*, 598 So. 2d 1358, 1360-62 (Ala. 1992); *City & County of San Francisco v. Sweet*, 906 P.2d 1196, 1203-04 (Cal. 1995); *Trevino v. HHL Financial Services, Inc.*, 945 P.2d 1345, 1348-50 (Colo. 1997); *Hospital Board of Directors v. McCray*, 456 So. 2d 936, 939 (Fla. Dist. Ct. App. 1984); *Watts v. Promina Gwinnett Health System, Inc.*, 530 S.E.2d 14, 17 (Ga. Ct. App. 2000); *Kenneth F. White, Chtd. v. St. Alphonsus Regional Medical Center*, 31 P.3d 926, 931-32 (Idaho Ct. App. 2001); *National Insurance Ass'n v. Parkview Memorial Hospital*, 590 N.E.2d 1141 (Ind. Ct. App. 1992); *Broadlawns Polk County Hospital ex rel. Fenton v. Estate of Major*, 271 N.W.2d 714, 716-17 (Iowa 1978); *Harlow v. Lloyd*, 809 P.2d 1228, 1230-32 (Kan. Ct. App. 1991); *Mena v. Muhleisen Properties*, 652 So. 2d 65, 69 (La. Ct. App. 1995); *Sisters of Charity of Providence of Montana v. Nichols*, 483 P.2d 279 (Mont. 1971); *Hillcrest Medical Center v. Fleming*, 643 P.2d 868, 869-70 (Okla. Civ. App. 1982); *Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310-11 (Tex. 1985); *Lynch v. Deaconess Medical Center*, 776 P.2d 681, 683-84 (Wash. 1989). But see *Alaska Native Tribal Health Consortium v. Settlement Funds Held For or to be Paid on Behalf of E.R.*, 84 P.3d 418, 431-35 (Alaska 2004) (holding that a hospital is liable for its pro rata share of attorney fees pursuant to the common fund doctrine); *In re Guardianship & Conservatorship of Bloomquist*, 523 N.W.2d 352, 360 (Neb. 1994) (same) (abrogated by amendment to Neb. Rev. Stat. §52–401 (Reissue 1998)); *Martinez v. St. Joseph Healthcare System*, 871 P.2d 1363, 1366-67 (N.M. 1994) (same).

The appellate court below acknowledged the holding in *Maynard* but held that a more recent decision of this court, *Bishop v. Burgard*, 198 Ill. 2d 495 (2002), "expanded" the application of the common fund doctrine to include a relationship between a plaintiff and a lienholder hospital. 398 Ill. App. 3d at 1083. The appellate court's

interpretation of *Bishop* is incorrect. Not only do the facts in that case bear little resemblance to those at bar, but our analysis in *Bishop* supports a finding that the common fund doctrine does not apply to the facts presented in this case.

The facts in *Bishop* were as follows. The plaintiff was injured in an automobile accident and filed a personal injury lawsuit against the defendant. The plaintiff's employer's ERISA Plan asserted a lien for the amount of medical expenses paid on behalf of the plaintiff. Under the subrogation provisions in the Plan agreement, the Plan had the right to recover 100% of the benefits paid to the extent of any judgment or settlement. *Bishop*, 198 Ill. 2d at 498-99. The Plan also had the right to file suit on the plaintiff's behalf against any person responsible for her injuries. After the plaintiff's attorney procured a settlement in the personal injury lawsuit, the attorney alleged to the circuit court that the Plan's lien should be reduced by one-third to reflect its share of attorney fees. This court agreed. We held that ERISA did not preempt a claim under the common fund doctrine because it is an independent action based on the attorney's rights, and wholly unrelated to the Plan itself. *Id.* at 506-07.

We further held that the common fund doctrine applied to the Plan's subrogation lien, based on the following requirements having been met: (1) the fund was created as the result of legal services performed by the attorney; (2) the claimant of the fund did not participate in its creation; and (3) the claimant benefitted or will benefit from the creation of the fund. *Id.* at 508. We rejected the Plan's contention that it would not benefit from the fund because it merely sought to enforce the reimbursement language in the Plan agreement. In response to that contention, we stated:

> "But for Bishop's action, and the efforts of her attorney, there would have been no fund from which the plan could have obtained reimbursement. For purposes of applying the common fund doctrine, it is irrelevant that the party who benefits from a lawyer's services has a *right* to compensation, be it an undifferentiated right of reimbursement or subrogation as is asserted here, *or a right to compensation under some other theory*. Obviously, everyone who brings a legal action is asserting some claim of right. However, a mere right may amount to nothing more than a possibility unless it is properly

asserted. That is the point. The real question is whether the plan obtained the benefit of a lawsuit without contributing to its costs.\*\*\* The policy behind the fund doctrine is to prevent subrogees from 'freeloading.' [Citation.]" (Emphasis in original and added.) *Bishop*, 198 Ill. 2d at 510.

Contrary to the conclusion of the appellate court in the case at bar, the preceding language, that a "right to compensation under some other theory" is irrelevant for purposes of the common fund doctrine, did not "expand" the doctrine to include a relationship between a plaintiff and a lienholder hospital. Read in context, it is clear that the ERISA Plan in *Bishop* benefitted from the fund by obtaining a reimbursement " 'which it would not have received absent the fund's creation.' " *Bishop*, 198 Ill. 2d at 509 (quoting *Taylor v. State Universities Retirement System*, 203 Ill. App. 3d 513, 520 (1990)). Thus, the Plan was unjustly enriched by the attorney's efforts and was required to contribute to the costs of the fund. *Bishop*, 198 Ill. 2d at 510.

In contrast to the ERISA Plan in *Bishop*, the Hospitals were not unjustly enriched because their claims were not contingent on the plaintiffs' rights against a third party or the creation of a fund. The Hospitals' claims existed irrespective of the outcome of the personal injury litigation. The benefit to the Hospitals by having their liens paid under the Act was merely an incidental benefit because the Hospitals' claims were primarily against the plaintiffs rather than the fund. In *Bishop*, the Plan would not have obtained reimbursement if not for the lien. Here, the Act expressly allows a hospital to "pursue collection, through all available means, of its reasonable charges" that remain unpaid after satisfaction of the lien. 770 ILCS 23/45 (West 2008). Therefore, the Hospitals did not directly benefit from, and were not unjustly enriched by, the efforts of the plaintiffs' attorneys. See *Trevino v. HHL Financial Services, Inc.*, 945 P.2d 1345, 1349 (Colo. 1997) ("The hospital's right of collection on its lien flows from the personal injury litigation, but its cause of action does not. The defendants' cause of action or right to payment arose from the provision of medical care to [plaintiff] for which he agreed to pay, regardless of the outcome of the personal injury action.").

Two additional characteristics set this case apart from other cases to which the common fund doctrine has been applied. First, unlike a

subrogee or a member of a class action, the Hospitals had no standing to participate in the plaintiffs' personal injury lawsuits, nor could they bring independent causes of action against the tortfeasors. See *Sisters of Charity of Providence of Montana v. Nichols*, 483 P.2d 279, 283 (Mont. 1971) ("The obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liabilities ***. But here, unlike that situation, the hospital's claim and lien is based upon a debt owed the hospital by its patient in whose shoes it does not stand for any purpose ***.") The plaintiffs argue that the Hospitals benefitted from their attorneys' efforts because the Hospitals avoided having to pay their own attorney to pursue collection of the unpaid medical bills. While this is true, the Hospitals also had no opportunity to choose their own counsel or to negotiate a settlement on their own terms in the personal injury litigation.

Secondly, in a typical common fund case, the fund has been "created for the benefit of the entire class." *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995). Plaintiffs' attorneys did not recover the settlements for the benefit of a class but, rather, for the benefit of their clients. Because the attorneys obtained the funds for the plaintiffs' benefits, regardless of the Hospitals' interests, the plaintiffs and the Hospitals are not similarly situated with respect to the fund and do not share the same interests in the fund. See Restatement (Third) of Restitution and Unjust Enrichment §30 cmt. c, illus. 14 (Tentative Draft No. 3, 2004) (an attorney has no claim for fees against a lienholder hospital because the hospital and the plaintiff do not share parallel interests in the fund); *Broadlawns Polk County Hospital ex rel. Fenton v. Estate of Major*, 271 N.W.2d 714, 717 (Iowa 1978) (The common fund theory does not apply because "the hospital and the [estate] administrator do not stand on equal bases as claimants against the fund. Rather, the hospital's claim to the fund arose only because the hospital was the decedent's, and thus his estate's, creditor.").

Accordingly, based on our decision in *Maynard*, we find that the lower courts erred when they applied the common fund doctrine to the instant case.

Conclusion

For the foregoing reasons, the judgments of the appellate and circuit courts are reversed. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

Appellate court judgment reversed;

circuit court judgment reversed;

cause remanded.

CHIEF JUSTICE KILBRIDE and JUSTICE KARMEIER took no part in the consideration or decision of this case.