Modified Rule 23 Order filed
July 12, 2016.
Motion to publish granted
August 26, 2016.

2016 IL App (5th) 140405

NO. 5-14-0405

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| EDWIN McKIM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 14-MR-31 |
| | ) | |
| SOUTHERN ILLINOIS HOSPITAL SERVICES, | ) | |
| d/b/a Herrin Hospital, and WILLIAMSON COUNTY | ) | |
| AMBULANCE, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Southern Illinois Hospital Services, | ) | David K. Overstreet, |
| Defendant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Welch and Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Southern Illinois Hospital Services d/b/a Herrin Hospital (Herrin Hospital) appeals from the trial court's July 25, 2014, order adjudicating liens and distributing the settlement proceeds.   Herrin Hospital contends that the trial court improperly included Medicare, Medicare Part D, and Medicaid "liens" in the total amount of liens subject to the 40% cap mandated by the Health Care Services Lien Act.  Because the court allowed 100% reimbursement of the Medicare and Medicaid bills, Herrin

1

Hospital's reimbursement was substantially decreased. In addition, Herrin Hospital claims that the trial court improperly required the Health Care Services Lien Act lienholders to pay plaintiff Edwin McKim's costs of suit pursuant to the common fund doctrine. We find that the judgment order distributing the settlement is contrary to the plain language of the Health Care Services Lien Act and is in conflict with Medicare's secondary payer provison and the Illinois Public Aid Code. Additionally, the trial court's assessment of court costs to Herrin Hospital and Williamson County Ambulance does not comply with Illinois Supreme Court decisions. We modify the judgment pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994).

¶ 2                                    BACKGROUND

¶ 3     This appeal involves the adjudication of liens under the Health Care Services Lien Act (770 ILCS 23/1 *et seq.* (West 2012)). The Health Care Services Lien Act limits the total amount of medical liens to 40% of the settlement or verdict. At issue is whether bills owed to Medicare, Medicare Part D, and Medicaid can be included in the 40% cap under the Health Care Services Lien Act. Also at issue is whether the 40% amount of the settlement is a "common fund" created for the benefit of the lienholders and whether the plaintiff's attorney's costs should be paid by the lienholders from their *pro rata* shares of the 40% of the settlement.

¶ 4     Edwin McKim was involved in a motor vehicle accident in which he sustained bodily injuries and damages. He sought treatment for these injuries at Herrin Hospital. He and his attorney reached a $16,000 settlement with the at-fault driver.

2

¶ 5    McKim filed a complaint to adjudicate liens on May 23, 2014.  McKim's medical bills, resulting from injuries sustained in the motor vehicle accident, totaled $10,172.32.  Herrin Hospital held a $5803 lien against McKim's settlement proceeds.  McKim owed Williamson County Ambulance $1530.  McKim also identified Medicare, Medicare Part D, and Medicaid as entities to which he owed money.  The total amount owed to those three entities was $2839.32.  In his prayer for relief, McKim asked the court to limit all of the medical liens (including the Medicare and Medicaid "liens") to no more than 40% of the $16,000 settlement−$6400.  Acknowledging that the Medicare and Medicaid liens take priority, McKim asked the court to divide the balance of the $6400−$3560.68−*pro rata* between Herrin Hospital and Williamson County Ambulance.  He also asked the court to apportion the costs of suit between the two Illinois Health Care Services Lien Act lienholders.  McKim's costs were $494.93.

¶ 6    In response to the complaint, Herrin Hospital argued that the 40% cap mandated by the Health Care Services Lien Act can only be distributed between Herrin Hospital and Williamson County Ambulance.  Furthermore, Herrin Hospital claimed that medical providers with perfected liens could not be responsible for a *pro rata* share of litigation costs.  Finally, Herrin Hospital asserted that the Medicare and Medicaid liens could not be subject to the Health Care Services Lien Act but instead should be adjudicated pursuant to 42 U.S.C. § 1395y(b)(2)(A)(ii) (hereafter referred to as the Medicare Secondary Payer Act) and the Illinois Public Aid Code (305 ILCS 5/11-22 (West 2012)).  Herrin Hospital argued that the priority of the liens was Medicare, followed by the attorney's lien, Medicaid, Health Care Services Lien Act providers, and, finally, McKim.

3

¶ 7    The trial court held a hearing and entered the order proposed by McKim on July 25, 2014.  In that order, the court combined the Medicare, Medicare Part D, and Medicaid bills along with the bills from Herrin Hospital and Williamson County Ambulance.  The court held that all bills were subject to the 40% rule and that the total allocated for all of these bills was $6400.  The court's order directed full reimbursement of the Medicare, Medicare Part D, and Medicaid bills.  The remaining balance was to be shared *pro rata* by Herrin Hospital and Williamson County Ambulance.  Medicare, Medicare Part D, and Medicaid were not assessed a share of the court costs.  The court directed the costs to be subtracted *pro rata* from the shares of Herrin Hospital and Williamson County Ambulance.   Finally, the court awarded McKim and his attorney each 30% of the $16,000.  From the $16,000, the parties received the following:

| | |
|---|---|
| McKim | $4800; |
| Attorney | $4800 plus $494.93 in costs; |
| Herrin Hospital | $2421.94 (gross bill of $5803; received $2812.94 share less $391 in costs); |
| Williamson County Ambulance | $643.81 (gross bill of $1530; received $747.74 share less $103.93 in costs); |
| Medicare | $158.30; |
| Medicaid | $221.41; |
| Medicare Part D | $2459.61. |

Herrin Hospital appeals from this order.

4

¶ 8                              LAW AND ANALYSIS

¶ 9     Herrin Hospital raises three issues on appeal.  First, Herrin Hospital argues that the trial court erred in adding the Medicare and Medicaid liens to the liens perfected pursuant to the Health Care Services Lien Act.  Second, Herrin Hospital contends that case law interpreting the Health Care Services Lien Act holds that perfected lienholders are not responsible for plaintiff's costs of suit.  Finally, Herrin Hospital claims that the trial court's resulting settlement proceeds distribution was incorrect.

¶ 10   As the adjudication involves interpretation of federal and state law, we review the trial court's order on a *de novo* basis.  *Blum v. Koster*, 235 Ill. 2d 21, 29, 919 N.E.2d 333, 338 (2009).  Statutory language must be given its plain and ordinary meaning.  *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184, 902 N.E.2d 667, 670-71 (2009).  If the language used in a statute is unambiguous, there is no need to use any other rules of construction.  *Burrell v. Southern Truss*, 176 Ill. 2d 171, 174, 679 N.E.2d 1230, 1232 (1997).

¶ 11                            I. Statutory Provisons

¶ 12                      A. Health Care Services Lien Act

¶ 13   We begin our analysis of the trial court's lien adjudication with the relevant sections of the Health Care Services Lien Act. Section 10(a) of the Health Care Services Lien Act states: "Every health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person *** shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment

5

of damages to the injured person." 770 ILCS 23/10(a) (West 2012). The total amount of medical liens pursuant to this act cannot exceed 40% of the settlement. *Id.* Section 10(b) provides that all perfected lienholders shall share proportionate amounts subject to the 40% limit. 770 ILCS 23/10(b) (West 2012). Finally, section 10(c) states that if the total amount of the medical liens meets or exceeds the 40% limit, then the 40% limit is divided in two halves: 20% of the settlement is to be distributed to health care professionals, and 20% is to be distributed to health care providers. 770 ILCS 23/10(c) (West 2012). A health care professional is defined as "any individual in any of the following license categories: licensed physician, licensed dentist, licensed optometrist, licensed naprapath, licensed clinical psychologist, or licensed physical therapist." 770 ILCS 23/5 (West 2012). A health care provider is defined as "any entity in any of the following license categories: licensed hospital, licensed home health agency, licensed ambulatory surgical treatment center, licensed long-term care facilities, or licensed emergency medical services personnel." *Id.* Additionally, when the medical liens meet or exceed 40% of the settlement, the attorney's lien is limited to 30%. 770 ILCS 23/10(c) (West 2012).

¶ 14                                            B. Medicare

¶ 15    The Medicare Secondary Payer Act disallows payment for any item or service when "payment has been made or can reasonably be expected to be made *** under an automobile or liability insurance policy or plan (including a self-insured plan)." 42 U.S.C. § 1395y(b)(2)(A)(ii) (2012). Additionally under the Medicare Secondary Payer Act, any primary plan that receives payment must reimburse Medicare if it can be shown that the primary plan had a responsibility to make payment, demonstrated by a judgment

or a payment conditioned upon the recipient's compromise, waiver, or release. 42 U.S.C. § 1395y(b)(2)(B)(ii) (2012). Regulations promulgated by the agency state that the agency "has a right of action to recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment." 42 C.F.R. § 411.24(g) (2012).

¶ 16                                    C. Medicaid

¶ 17   The Illinois Public Aid Code provides that the Illinois Department of Healthcare and Family Services has a charge upon all claims, demands, and causes of action for injuries to someone who received or has applied for financial aid, including health care benefits. 305 ILCS 5/11-22 (West 2012). Additionally, this right of reimbursement "take[s] priority over all other liens and charges existing under the laws of the State of Illinois with the exception of the attorney's lien." *Id.* Distribution of settlement proceeds is within the trial court's powers. *Id.*

¶ 18      II. Inclusion of Medicare, Medicare Part D, and Medicaid in 40% Cap

¶ 19   Herrin Hospital argues that the language used in the Health Care Services Lien Act definitions is unambiguous. Herrin Hospital contends that Herrin Hospital and Williamson County Ambulance are the only two providers in this case eligible to share proportionately in the 40% amount of the settlement. We agree.

¶ 20   The Health Care Services Lien Act creates a statutory lien for providers in two defined categories. A "health care professional" is defined as "any individual in any of the following license categories: licensed physician, licensed dentist, licensed optometrist, licensed naprapath, licensed clinical psychologist, or licensed physical

7

therapist." 770 ILCS 23/5 (West 2012). A "health care provider" is defined as "any entity in any of the following license categories: licensed hospital, licensed home health agency, licensed ambulatory surgical treatment center, licensed long-term care facilities, or licensed emergency medical services personnel." *Id.* In this case, it is clear that Herrin Hospital and Williamson County Ambulance are both "health care providers" as defined by the Health Care Services Lien Act. By including Medicare, Medicare Part D, and Medicaid in the 40% limit established by the Health Care Services Lien Act for health care professionals and providers, the trial court implicitly found that these entities were either health care professionals or health care providers. We disagree with this conclusion. Medicare and Medicaid are public agencies and do not directly provide medical care to the patient. Instead, these agencies reimburse health care professionals and providers. We find that the statutory definitions of a "health care professional" and a "health care provider" are unambiguous. A court may not ignore the plain language of a statute. *Kinzer*, 232 Ill. 2d at 184, 902 N.E.2d at 670-71. Therefore, we conclude that Medicare, Medicare Part D, and Medicaid are not subject to the Health Care Services Lien Act.

¶ 21 We find additional support for this conclusion in the Medicare Secondary Payer Act and the Public Aid Code.

¶ 22 Under the Medicare Secondary Payer Act, Medicare does not pay for medical services in cases where an injury or illness was caused by another party or in situations where payment can be made by liability insurance. 42 U.S.C. § 1395y(b)(2)(A)(ii) (2012). If Medicare pays for medical care under such circumstances, the payment is

8

construed as a "conditional payment." 42 U.S.C. § 1395y(b)(2)(B)(i) (2012); 42 C.F.R. § 411.52 (2012). Medicare has a *direct right* to recover the entire amount of the bills paid from the entity responsible to make the primary payment, or alternatively from the individual or entity that received payment from the responsible party. 42 U.S.C. § 1395y(b)(2)(B)(iii) (2012).

¶ 23    Consequently, federal preemption is implicated. Federal statutes and regulations may preempt state law in three ways:

> "(1) the language of the statute or regulation expressly preempts state law; (2) Congress implemented a comprehensive regulatory scheme in a given area, removing the entire field from state law; or (3) state law as applied conflicts with federal law." *Moskowitz v. Washington Mutual Bank, F.A.*, 329 Ill. App. 3d 144, 146-47, 768 N.E.2d 262, 264 (2002).

See *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

¶ 24    Interpreting the Health Care Services Lien Act to include Medicare and Medicare Part D bills within the statutory 40% limit creates a conflict between that act and the Medicare Secondary Payer Act. Therefore, the federal statute preempts the state statute.

¶ 25    We also find support for our conclusion in section 11-22 of the Public Aid Code, which prioritizes the Illinois Department of Healthcare and Family Services' right to reimbursement over any other liens existing under Illinois law except for attorney's liens. 305 ILCS 5/11-22 (West 2012). The wording of this section is unambiguous and is without limitation. *Id.* "It is a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision, either in the same

or another act, which both relate to the same subject, the specific provision controls and should be applied." *People v. Villarreal*, 152 Ill. 2d 368, 379, 604 N.E.2d 923, 928 (1992). Accordingly, we find that the Public Aid Code controls as it is more specific than the applicable provision of the Health Care Services Lien Act.

¶ 26    McKim, however, argues that the Health Care Services Lien Act was amended in 2013 to include subrogation and that the Medicare, Medicare Part D, and Medicaid claims would fall under this statute. Section 50 of the Health Care Services Lien Act allows a subrogation claim to be reduced in proportion to the plaintiff's "(1) *** comparative fault; or (2) by reason of the uncollectibility of the full value of the claim for personal injury or death resulting from limited liability insurance." 770 ILCS 23/50 (West 2012). Even if we assumed that Medicare and Medicaid held subrogation interests, this section is preempted by the Medicare Secondary Payer Act and conflicts with the Public Aid Code, and it therefore does not apply in this case.

¶ 27    We find that the trial court erred by including Medicare, Medicare Part D, and Medicaid in the 40% limit of the Health Care Services Lien Act.

¶ 28                                  III. Court Costs

¶ 29    Herrin Hospital next argues that the trial court's adjudication was wrong because court costs were assessed against the lienholders pursuant to the common fund doctrine. The common fund doctrine authorizes the reimbursement of litigation expenses and attorney fees out of settlement funds. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572, 739 N.E.2d 1263, 1271 (2000). A plaintiff can collect attorney fees and costs from any lienholder that is subject to the common fund doctrine. *McGee v.*

10

*Oldham*, 267 Ill. App. 3d 396, 399, 642 N.E.2d 196, 198-99 (1994). Herrin Hospital argues that medical providers with perfected Health Care Services Lien Act liens are not subject to the common fund doctrine. *Maynard v. Parker*, 75 Ill. 2d 73, 75, 387 N.E.2d 298, 300 (1979); *Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261, 265-68, 950 N.E.2d 646, 648-50 (2011).

¶ 30   At the time that the trial court entered this order, an opinion from this court, *Stanton v. Rea*, supported certain aspects of this adjudication. *Stanton v. Rea*, 2012 IL App (5th) 110187, 978 N.E.2d 1146. *Stanton v. Rea* held that the injured plaintiff and his attorney were each entitled to receive 30% of the settlement before any medical bills were paid. *Id.* ¶ 18. Additionally, the court held that the plaintiff is not responsible to pay his own costs. *Id.* The *Stanton* court held that the attorney's costs must be subtracted from the settlement before computation of the 40% allocated by the Health Care Services Lien Act to health care professionals and health care providers holding liens, stating:

"In order to ensure that plaintiff receives 30% of the judgment as intended by the Act, it is necessary that computation of the 40% does not begin until costs associated with bringing the case to trial and securing payment of the judgment have been deducted from the amount of the original verdict." *Id.*

¶ 31   After the trial court's adjudication order was entered in July of 2014, the Illinois Supreme Court overruled *Stanton v. Rea*, in *McVey v. M.L.K. Enterprises, LLC*, 2015 IL 118143, 32 N.E.3d 1112.

¶ 32   In *McVey v. M.L.K. Enterprises, LLC*, McVey settled a personal injury lawsuit for $7500. *Id.* ¶ 3. Memorial Hospital of Carbondale was a lienholder in the amount of

11

$2891.64. *Id.* ¶ 4. McVey incurred attorney fees and $846.66 in litigation costs. *Id.* Citing *Stanton v. Rea*, the *McVey* trial court awarded 30% of the $7500 ($2250) to the attorney, $2500 to the hospital, and the balance of $2750 to McVey. *Id.* ¶¶ 5-6. The trial court concluded that *Stanton* conflicted with the supreme court's opinion in *Wendling v. Southern Illinois Hospital Services* and refused to deduct attorney fees and costs before calculating the amount available to the hospital. *Id.* ¶ 6. The appellate court reversed based on *Stanton v. Rea*, holding that the court cannot calculate the health care liens until after the court reduces the settlement by attorney fees and costs. *McVey v. M.L.K. Enterprises, L.L.C.*, 2014 IL App (5th) 130350-U, ¶ 11.

¶ 33    The supreme court granted the hospital's petition for leave to appeal. *McVey*, 2015 IL 118143, ¶ 8, 32 N.E.3d 1112. The court reiterated that the Health Care Services Lien Act limited the total amount of liens to no more than 40% of the settlement. *Id.* ¶ 13 (citing 770 ILCS 23/10(a) (West 2012)). However, because the hospital was the only lienholder, section 10(c) limited the amount that the hospital could recover to one-third of the settlement. *Id.* (citing 770 ILCS 23/10(c) (West 2012)). The supreme court stated that the Health Care Services Lien Act contains no language allowing the deduction of attorney fees and costs from the settlement before the lienholder's percentage of the settlement is calculated. *Id.* ¶ 14. The supreme court refused to interpret the Health Care Services Lien Act to add limiting language not included by the legislature. *Id.*

¶ 34    The supreme court noted that a recent appellate court case, *Wolf v. Toolie*, was consistent with this holding. *Id.* ¶ 15 (citing *Wolf v. Toolie*, 2014 IL App (1st) 132243, 19 N.E.3d 1154). The *Wolf* court analyzed the language of the Health Care Services Lien

12

Act and the Attorneys Lien Act. Both acts used identical language regarding percentage limitations for healthcare and attorney's liens:

> "If the total amount of the liens under the Act exceeds 40% of the ' "verdict, judgment, award, settlement, or compromise," ' then attorney liens ' "shall not exceed" ' 30% of the ' "verdict, judgment, award, settlement, or compromise." ' " *Id*. ¶ 17 (quoting *Wolf*, 2014 IL App (1st) 132243, ¶ 22, 19 N.E.3d 1154 (quoting 770 ILCS 5/1 (West 2012), and 770 ILCS 23/10(c) (West 2012))).

¶ 35　From this, the *Wolf* court concluded, and the *McVey* court concurred, that " 'the consistent use of terminology shows that the legislature intended health care liens and attorney liens to be calculated from the same total [award].' " *Id.* (quoting *Wolf*, 2014 IL App (1st) 132243, ¶ 22, 19 N.E.3d 1154).

¶ 36　In addition, the *McVey* court found that its earlier opinion in *Wendling* was instructive. *Id. ¶* 18. In *Wendling*, two hospitals filed liens pursuant to the Health Care Services Lien Act. *Id.* (citing *Wendling*, 242 Ill. 2d at 264, 950 N.E.2d at 647-48). After the claims settled, the plaintiffs asked the court to adjudicate the liens and to award their attorneys additional fees equal to one-third of the amount of the hospitals' liens. *Id.* (citing *Wendling*, 242 Ill. 2d at 264, 950 N.E.2d at 648). The trial and appellate courts agreed. However, the supreme court reversed, holding "that the hospitals were not unjustly enriched by the attorneys' services and therefore were not required to contribute to the costs of litigation." *Id.* The *Wendling* court found that plaintiffs' attorney did not reach the underlying settlements to benefit the hospitals. *Id.*

¶ 37   In conclusion, the *McVey* court held that section 10 of the Health Care Services Lien Act was unambiguous and did not permit any deduction of attorney fees and/or costs before calculating the percentage to be paid to any health care lienholder. *Id.* ¶ 19.

¶ 38   In this case, the trial court held that the attorney's costs were to be apportioned between the two lienholders *pro rata*. This decision is in contradiction to the holdings in both *Wendling* and *McVey*. McKim and his attorney did not obtain the settlement to benefit Herrin Hospital and Williamson County Ambulance. Therefore, the court's order directing the two lienholders to pay the attorney's costs from the Health Care Services Lien Act 40% limit was improper.

¶ 39                    IV. Distribution of Settlement Proceeds

¶ 40   Based upon the statutory analysis in this opinion, we conclude that the trial court's adjudication was incorrect and must be vacated. We acknowledge the difficulty that proper construction of liens may pose to plaintiffs and their attorneys under circumstances when recovery is compromised by inadequate insurance or other attendant problems. In those circumstances, the settlement process can be adversely affected. While it is true, as plaintiff argues, that as a public policy the courts encourage settlements, we must construe the statute as written and cannot depart from the plain meaning to reach a desired result in any particular case. *Kugler v. Southmark Realty Partners III*, 309 Ill. App. 3d 790, 797, 723 N.E.2d 710, 716 (1999) (quoting *Buckellew v. Board of Education*, 215 Ill. App. 3d 506, 511, 575 N.E.2d 556, 559 (1991)); *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394-95, 712 N.E.2d 298, 305-06 (1998).

14

¶ 41 Before we determine the distribution of the settlement, we note that the percentage that Health Care Services Lien Act lienholders can recover is further limited in certain situations. Pursuant to section 10(c) of the Health Care Services Lien Act, "[n]o individual licensed category of health care professional (such as physicians) or health care provider (such as hospitals) *** may receive more than one-third of the *** settlement *** secured by or on behalf of the injured person on his or her claim or right of action." 770 ILCS 23/10(c) (West 2012). Herrin Hospital and Williamson County Ambulance are health care providers. The total combined amount of their liens is $7133, which represents 44.6% of the $16,000 settlement. Therefore, the liens of Herrin Hospital and Williamson County Ambulance exceed the one-third limitation, and thus they are only entitled to *pro rata* shares of one-third of the settlement, $5333.33.

¶ 42 In accordance with the analysis of this opinion, we find that the $16,000 settlement distribution is as follows:

| | |
|---|---|
| Medicare | $158.30; |
| Medicare Part D[1] | $2459.61; |

---

[1]On appeal, Herrin Hospital argues for the first time that HealthSprings Life & Health Insurance Company is not a Medicare Part D provider. We note that the federal government does not self-administer Medicare Part D but contracts with select private companies to sell coverage. Center for Medicare Advocacy, www.medicareadvocacy.org/medicare-info/medicare-part-d (last visited Feb. 5, 2016). However, we do not reach the precise question regarding HealthSprings, because Herrin

| McKim's Attorney | $4800; |
|---|---|
| Medicaid | $221.41; |
| Health Care Services Lien Act Lienholders | $5333.33: |

|  |  |
|---|---|
| Herrin Hospital | $4218.66 and |
| Williamson County Ambulance | $1114.67; |

| McKim | $3027.35. |
|---|---|

¶ 43                                            CONCLUSION

¶ 44    Pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we modify the judgment of the circuit court of Franklin County according to the detail contained within ¶ 42 of this opinion.

¶ 45    Judgment modified.

---

Hospital failed to raise the issue in the trial court or in its notice of appeal and has thus forfeited its right to do so on appeal. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 92, 923 N.E.2d 735, 741 (2010).

2016 IL App (5th) 140405

NO. 5-14-0405

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | | |
|---|---|---|---|
| EDWIN McKIM, | ) | Appeal from the | |
| | ) | Circuit Court of | |
| Plaintiff-Appellee, | ) | Franklin County. | |
| | ) | | |
| v. | ) | No. 14-MR-31 | |
| | ) | | |
| SOUTHERN ILLINOIS HOSPITAL SERVICES, | ) | | |
| d/b/a Herrin Hospital, and WILLIAMSON | ) | | |
| COUNTY AMBULANCE, | ) | | |
| | ) | | |
| Defendants | ) | | |
| | ) | Honorable | |
| (Southern Illinois Hospital Services, | ) | David K. Overstreet, | |
| Defendant-Appellant). | ) | Judge, presiding. | |

_____

| | |
|---|---|
| **Modified Rule 23 Filed:** | July 12, 2016 |
| **Motion to Publish Granted:** | August 26, 2016 |
| **Opinion Filed:** | August 26, 2016 |

_____

**Justices:** Honorable Melissa A. Chapman, J.

Honorable Thomas M. Welch, J., and
Honorable Richard P. Goldenhersh, J.,
Concur

_____

| | |
|---|---|
| **Attorneys for Appellant** | Kara L. Jones, Feirich/Mager/Green/Ryan, 2001 West Main Street, P.O. Box 1570, Carbondale, IL 62903; John R. Daly, Attorney at Law, 1239 East Main Street, P.O. Box 3988, Carbondale, IL 62902-3988 |

_____

| | |
|---|---|
| **Attorneys for Appellee** | William A. Alexander, Matthew H. Caraway, Sam C. Mitchell & Associates, 115 East Main Street, P.O. Box 280, West Frankfort, IL 62896 |

_____