*In re* ESTATE OF ANTHONY WADE, A Disabled Person (Mattie Wade, as Guardian, Plaintiff-Appellee, v. Rehabilitation Institute of Chicago, Defendant-Appellant).

First District (2nd Division)   Nos. 86—1270, 86—1308, 86—1310 cons.

Opinion filed June 16, 1987.

Sidney Z. Karasik, Mary Ellen Dienes and Morris A. Gzesh, all of Chicago, for appellant.

Joseph L. Mack, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Rehabilitation Institute of Chicago (the hospital), asserted a lien against certain settlement proceeds received by plaintiff, estate of Anthony Wade (the plaintiff). The circuit court of Cook County, Law Division, disallowed a portion of the lien covering private duty nursing services. The Probate Division of the circuit court adopted the findings of the Law Division. The hospital appeals both orders. These cases have been consolidated on appeal.

Anthony Wade suffered injuries due to "perioperative complications" in April 1984. As a result of those injuries, he was declared a disabled person and his mother, Mattie Wade, was appointed his guardian. The trial court approved a settlement of the estate's subsequent malpractice cause of action against certain defendants not involved in this appeal. After appropriate fees were awarded, the estate received

$2,966,667 in settlement of its claim.

Anthony Wade was a patient at the hospital from January 10, 1985, through September 9, 1985. Plaintiff's total bill was $259,823.45.

From July 9, 1985, to September 9, 1985, when plaintiff was discharged from the hospital, he was not eligible for public aid because he was no longer indigent due to the settlement of his claim. The portion of the bill covering this period is not in dispute.

During the initial period of his hospitalization, from January 10, 1985, to July 8, 1985, plaintiff was eligible for public aid. The hospital sent invoices for general hospital care to the Illinois Department of Public Aid (IDPA) for payment. The invoices listed the private duty nursing services as noncovered services payable by the patient. The hospital made no claim for reimbursement for the private duty nursing services but noted the amount and stated that those services were not a covered charge under IDPA regulations. IDPA paid the hospital's charges and settled its lien with the estate.

At issue in this case is the balance of the hospital's lien for $53,818.50 covering the private duty nursing services from January 10, 1985, through July 8, 1985. Neither the reasonableness nor the necessity of the private duty nursing services is contested. Rather, the plaintiff contests the hospital lien on the basis that it is barred under the Public Aid Code. (Ill. Rev. Stat. 1985, ch. 23, par. 11—13.) After a hearing, the trial court found that, notwithstanding the fact that the hospital was not a contract vendor of private duty nursing services, it was incumbent upon the hospital to apply to have that service become a compensable service under a hospital regulation. Based upon this finding, the court entered an order disallowing the portion of the hospital's lien at issue and subsequently denied its motion to vacate. The Probate Division adopted the findings of the Law Division. These consolidated appeals followed.

I

The gravamen of plaintiff's argument is that the settlement of the IDPA's lien completely discharged his debt to the hospital. Plaintiff contends that the hospital was required to apply to the IDPA for reimbursement for the private duty nursing services because those services were covered charges under section H—205.1 of the IDPA regulations. Plaintiff reasons that since those services were a covered charge, the IDPA would have paid for it if asked to do so. Plaintiff relies on section 11—13 of the Public Aid Code. (Ill. Rev. Stat. 1985, ch. 23, par. 11—13.) That section provides that once a hospital receives vendor pay-

ments from the IDPA, the hospital is barred from seeking any further payment from the public aid recipient.

■ Regulation H—205.1 states that hospitals may not enroll to provide private duty nursing services. The private duty nursing care provided to the plaintiff was not covered by the hospital's contract with the IDPA. The hospital billed IDPA for inpatient care. Although private duty nursing care was noted on the invoice as a "non-covered" charge, the hospital did not bill the IDPA for that service. Since the hospital did not seek payment from the IDPA for the private duty nursing care at issue in this case, those services were not covered by the "vendor payment" from the IDPA. Therefore, the proscription of section 11—13 against obtaining additional payment for the services covered by a vendor payment is not applicable in the instant case. Ill. Rev. Stat. 1985, ch. 23, par. 11—13.

The hospital provides general hospital services for Public Aid patients under an agreement between the hospital and IDPA. The hospital does not provide private duty nursing care. Private duty nurses are independent contractors. The hospital advanced payment to the nurses for its Public Aid patient. It recognized that this nursing care is not covered by its agreement with IDPA and plainly noted that fact on its bills to IDPA.

■ At the hearing before the Law Division, the burden to prove the affirmative defense of payment was upon the Estate. (Ill. Rev. Stat. 1985, ch. 110, par. 2—613(d); *Michigan Avenue National Bank v. State Farm Insurance Cos.* (1980), 83 Ill. App. 3d 507, 514, 404 N.E.2d 426, *appeal denied* (1980), 81 Ill. 2d 593.) Payment is claimed by reason of plaintiff's argument that the hospital, through a Public Aid regulation, could have sought and obtained reimbursement for these private nursing services from IDPA. However, plaintiff did not offer any evidence to prove this defense. An assistant Attorney General, who appeared on behalf of the State agencies, was asked by the court if the private duty nursing costs are a "covered charge." He answered: "That I do not know." On the other hand, the hospital credit manager who deals with Public Aid cases regularly testified that the charges are not covered by Public Aid.

The hospital acted in good faith and did not seek to recover from Public Aid. It paid the private duty nurses so that its patient would have the benefit of a service that the hospital itself did not provide. It took the risk of never being repaid. This humanitarian act should not be defeated by plaintiff's feeble attempt at an affirmative defense.

The settlement which plaintiff received from third parties for his claim was based in some part on his medical expenses, including the

cost of the private duty nursing care for which the hospital is seeking reimbursement. It would be unconscionable to permit the plaintiff to make a windfall profit because the hospital acted as a Good Samaritan.

The hospital is not making a profit. In this case, it is merely a conduit. It arranged for necessary private duty nursing care for the plaintiff. Then it paid the nurses out of its own resources. At that time, the hope of recovery was remote. A debt was incurred by the plaintiff. Now that he is solvent, the hospital has a right to assert its lien under the Hospital Lien Act. Ill. Rev. Stat. 1985, ch. 82, par. 97.

■■ The fact that the hospital did not seek to have the private duty nursing care reimbursed by the IDPA does not defeat their lien. The lien arises by operation of the Hospital Lien Act. (Ill. Rev. Stat. 1985, ch. 82, pars. 97, 98.) Under the Act, a lien is established upon proof of services rendered by the nonprofit hospital. (Ill. Rev. Stat. 1985, ch. 82, par. 97.) In the case at bar, it is undisputed that the private duty nursing services were necessary and that the charges were reasonable. Since the record shows that the Hospital met its burden under the statute, the hospital has a valid lien for $53,818.50.

■■ Once the hospital lien is established under the Hospital Lien Act, the trial court has no discretion to reduce the amount of the lien so long as the total amount of liens filed is not in excess of one-third of the settlement. (*Wheaton v. Department of Public Aid* (1981), 92 Ill. App. 3d 1084, 1086-87, 416 N.E.2d 780, citing *O'Donnell v. Sears, Roebuck & Co.* (1979), 71 Ill. App. 3d 1, 388 N.E.2d 1073, *appeal denied* (1979), 79 Ill. 2d 613.) The liens were not in excess of one-third of the settlement and, therefore, the court was not authorized to disallow or reduce the amount of the hospital's lien.

Under the Hospital Lien Act, the plaintiff is a debtor obligated to pay for the services rendered by the hospital out of any resources which might become available to him. (*Maynard v. Parker* (1979), 75 Ill. 2d 73, 75, 387 N.E.2d 298.) Plaintiff received a monetary award in settlement of the malpractice cause of action. That settlement amount included damages for plaintiff's medical bills.

■■ Disallowance of the hospital's lien would result in a double recovery or an unjust enrichment to plaintiff. It would be unconscionable to permit plaintiff to receive free medical care and then allow him to recover damages for medical services from the tortfeasor and pocket the "windfall." (*Gordon v. Forsyth County Hospital Authority, Inc.* (M.D.N.C. 1975), 409 F. Supp. 708, 719, *modified* (4th Cir. 1976), 544 F.2d 748.) Under the facts of this case, plaintiff should be required to pay the hospital for services rendered out of the proceeds of the settlement.

For the foregoing reasons, the orders of the Law and Probate Divisions of the circuit court of Cook County disallowing the hospital's lien in the amount of $53,818.50 are reversed, and this cause is remanded with directions to enter orders allowing the lien against the estate.

Reversed and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.