No.  2--98--0109

November 24, 1998

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

DORIS TEMESVARY, ) Appeal from the Circuit Court

) of Du Page County.

Plaintiff-Appellee, )

)

) No. 95--L--1568

)

DIANE HOUDEK, )

)

Defendant )

)

(A.G. Phillips, d/b/a ) Honorable 

DuPage Nuclear Medicine Clinic, ) Paul Noland,

Lienholder-Appellant). ) Judge, Presiding.

JUSTICE RATHJE delivered the opinion of the court:

In this appeal, we are asked to decide if a trial court may determine the reasonableness of a physician’s charges prior to adjudicating the physician’s lien under the Physicians Lien Act (the Act) (770 ILCS 80/0.01 
et seq.
 (West 1996)).  We answer the question in the affirmative but reverse and remand on other grounds.

The plaintiff, Doris Temesvary, filed a personal injury lawsuit against the defendant, Diane Houdek.  On November 10, 1997, the plaintiff filed a petition to adjudicate liens, alleging a settlement of the above suit and that the only outstanding lien was the bill of Dr. A. G. Phillips, in the amount of $8,140 for nuclear medicine studies performed on the plaintiff.   The petition further alleged that Dr. Phillips’s charges were "in excess of the normal and customary costs for such services in the medical community" and were therefore "unreasonable."  Dr. Phillips filed a response, and  the matter was set for hearing on December 23, 1997.  

Prior to the commencement of the hearing, Dr. Phillips disputed the authority of the trial court to refuse to enforce the amount of his lien when the lien was not in excess of one-third of the amount of the settlement.  See 770 ILCS 80/1 (West 1996).  The trial court rejected that argument, relying on the "reasonable charges" language of the Act (770 ILCS 80/1 (West 1996)).

Dr. Phillips, whose office is in Naperville, testified that he specializes but is not board certified in nuclear medicine.  He provides nuclear medicine imaging services, mostly to patients who have been injured in accidents and who are referred to him by other healthcare providers.  He is not associated with any hospital or group practice.  When a patient is referred to him, he takes a history, explains what tests will be performed, and how much it will cost.  He has the patient sign forms indicating that the patient has had a complete explanation of the procedure.  The doctor then administers a radioactive isotope; after a waiting period, the nuclear medicine studies are performed.  Imaging is done with a gamma system, which provides images of the target organ system; the modalities used with the system are planar, digital, and SPECT.  After the processing and interpretation, a report is sent to the referring physician.  In setting his fees, Dr. Phillips takes into consideration his overhead, which includes the cost of his equipment, maintenance expenses, and office costs. 

Dr. Phillips testified further that the plaintiff was referred to him by another physician.  Upon meeting with the plaintiff, Dr. Phillips explained the procedures and the costs involved for each type of study he would perform.  The plaintiff signed a request and consent for a nuclear medicine study.  She also signed a fee and price disclosure, which stated that she understood that the price for the nuclear studies would range from $1,500 to $9,500 and that the price was higher than what was charged at local hospitals.    

Dr. Phillips further testified that the plaintiff was at his office from 9:30 a.m. to 3 p.m for the performance of the nuclear studies.  She was the only patient seen that day.  After the studies were performed, the doctor processed the work, interpreted the results, and dictated the report.  All together, he spent approximately eight hours on the plaintiff’s case performing the above tasks.  He believed that his charges were reasonable.

Dr. Phillips further testified that nuclear medicine studies can be performed at hospitals where the charges are considerably less.  His practice differs from that of a hospital in that, in addition to providing services to the patients, he is responsible for all of the equipment and maintenance costs and for running the business and collecting payments.  In a hospital, a technician actually performs the nuclear studies, not a physician.  The SPECT system costs between $300,000 and $700,000.  

On cross-examination, Dr. Phillips disputed that the same tests he performed would cost between $900 and $2,500 at a hospital.  He believed that his charges are reasonable and that other physicians would agree with that assessment if they did the same work.  He denied telling the plaintiff that she did not need to be concerned with the bill.  

Dr. Charles Martinez, board certified in internal and nuclear medicine and director of nuclear medicine at Lutheran General Hospital, testified for the plaintiff as an expert witness as to the usual and customary charges for nuclear medicine in the greater Chicagoland area.  At the hospital, the charges are determined by the cost of the material, the technologist’s pay, and the cost of the overhead of the area in which they worked.  The trial court overruled Dr. Phillips’s objection to Dr. Martinez's rendering an opinion as to whether Dr. Phillips’s charges were reasonable.  

After reviewing Dr. Phillips’s charges, Dr. Martinez opined that the charges were not reasonable based upon his knowledge of what area hospitals and several imaging centers charge.  According to Dr. Martinez, the charge for most of their complete scans, including the professional component, would be around $1,000.   If the highest amount for the "technical professional component" were charged, the charge for doing the same work that Dr. Phillips did would be $2,509.

On cross-examination, Dr. Martinez acknowledged that he had never been in private practice doing nuclear medicine but stated that he did know someone who ran a private clinic.  He further acknowledged that contracts with HMOs and other prepaid medical plans had a tremendous influence on what the hospital charged.  He denied that without the existence of such plans the hospital would charge more.  Lutheran General Hospital has eight gamma cameras, which are in use six hours a day.  The technologists who perform the studies at the hospital are paid between $30,000 and $50,000 per year.  

On redirect examination, Dr. Martinez testified that a colleague in private practice informed him that the usual and customary charge for these types of studies in his area was between $800 and $1,500.  

On re-cross-examination, Dr. Martinez testified that of the $2,509 charge, $771 would be for the professional component, or the physician’s time, which would generally be one hour.  The remaining  $1,738 is the technical component.  Conducting the scans is delegated to a technician.  

The trial court found that there was no evidence controverting that Dr. Phillips performed the services listed on his bill but  there was conflicting evidence on the issue of reasonableness.  The trial court found that the reasonable charge for the services Dr. Phillips performed was $2,509 and ordered Dr. Phillips’s lien adjudicated in that amount.  This appeal followed.

Prior to addressing the merits of this case, we note that Dr. Phillips filed a motion to strike a portion of the plaintiff’s brief that we ordered taken with the case.  Based on our review of the record, we grant Dr. Phillips’s motion to strike and, therefore, will not consider the statement in the plaintiff’s brief of which Dr. Phillips complained.

Dr. Phillips contends that the trial court was without authority to reduce his lien based upon the reasonableness of his charges.  

Section 1 of the Act provides in pertinent part as follows:

"Every licensed physician practicing in this State who renders services by way of treatment to injured persons *** shall have a lien upon all claims and causes of action for the amount of his 
reasonable charges
 up to the date of payment of such damages.

Provided, however, that the total amount of all liens hereunder shall not exceed 1/3 of the sum paid or due to the injured person on the claim or right of action ***."  (Emphasis added.) 770 ILCS 80/1 (West 1996).

The legislature has the power, subject to constitutional limitations, to provide for liens to secure the payment of debts and other obligations, and legislative authority exists to create by statute a right of lien where no such right existed at common law.  
Gaskill v. Robert E. Sanders Disposal Hauling
, 249 Ill. App. 3d 673, 677 (1993).  Lien laws are liberally construed to effect the purpose intended by the legislature.  
Gaskill
, 249 Ill. App. 3d at 677.  In construing a statute, courts should look to the language of the statute as the best indication of legislative intent, giving the terms of the statute their ordinary meaning.  
The Village of Cary v. Trout Valley Ass'n
, 282 Ill. App. 3d 165, 169 (1996).  A statute must be read as a whole, and no word should be interpreted so as to be rendered meaningless.  
People v. Bartlett
, 294 Ill. App. 3d 435, 439 (1998).

It is clear from the language of section 1 of the Act that the legislature intended to afford protection in the form of a lien under the Act to a physician only for the reasonable amount of his charges.  Had the legislature intended to protect the lien claim of the physician in any amount he chose to charge, it could have done so by avoiding the use of the term "reasonable" in the statute.  
Cf.
 
Gaskill
, 249 Ill. App. 3d at 678 (had the legislature intended to allow the recovery of interest or service charges on a patient’s unpaid balance pursuant to the Act, it certainly could have done so).  

Dr. Phillips maintains that this court is bound by a line of cases commencing with 
O’Donnell v. Sears, Roebuck & Co.
, 71 Ill. App. 3d 1 (1979), standing for the proposition that the authority of a trial court to adjudicate a lien pursuant to the Hospital Lien Act (770 ILCS 35/0.01 
et seq.
 (West 1996)) or the Physicians Lien Act in no way authorizes the trial court to reduce the amount of the liens as long as the total amount of the liens filed under each act is not in excess of one-third the amount of the settlement.  
Wheaton v. The Department of Public Aid
, 92 Ill. App. 3d 1084, 1086 (1981); see also 
Burrell v. Southern Truss
, 176 Ill. 2d 171 (1997);  
In re Estate of Wade
, 156 Ill. App. 3d 844, 848 (1987) (once hospital lien is established under the Hospital Lien Act, the trial court has no discretion to reduce the amount of the lien provided that the total amount of the liens does not exceed one-third of the settlement, citing 
Wheaton
 and 
O’Donnell
); 
Illini Hospital v. Bates
, 135 Ill. App. 3d 732 (1985); 
In re Estate of McMillan
, 115 Ill. App. 3d 1022 (1983).   The plaintiff, however, argues that the language of the above cases is 
dictum
, since the issue of the reasonableness of the charges was never addressed by the courts in those cases.  

In 
Cates v. Cates
, 156 Ill. 2d 76 (1993), our supreme court discussed the term "
dictum
," stating as follows:

"The term '
dictum
' is generally used as an abbreviation of 
obiter
 
dictum
, which means a remark or opinion uttered by the way.  Such an expression or opinion as a general rule is not binding as authority or precedent within the 
stare
 
decisis
 rule.  [Citations.]  On the other hand, an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, if 
dictum
, is a judicial 
dictum
. [Citations.] And further, a judicial 
dictum
 is entitled to much weight, and should be followed unless found to be erroneous.  [Citations.]  Even 
obiter
 
dictum
 of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court. [Citation.]"  
Cates
, 156 Ill. 2d at 80.

None of the line of cases culminating in the decision in 
Burrell
 have addressed the precise issue raised here.  See 
Gaskill
, 249 Ill. App. 3d at 677 ("reasonable charges" in  Physicians Lien Act are confined to charges relating to injuries to the patient resulting from the conduct of the tortfeasor; they do not include interest on an unpaid balance).  In 
O’Donnell
,  no issue was raised as to the reasonableness of the charges.  In 
Wheaton
, the parties stipulated that the liens were proper as to the amounts and validity; no separate question as to reasonableness was raised.  
Wheaton
, 92 Ill. App. 3d at 1085.  In 
Burrell
, the court identified the issue before it as "whether the hospital and physicians lien acts limit the recovery of all lienholders under these acts to a combined one-third of plaintiff’s recovery, or whether the statutes simply limit recovery under each individual lien act to one-third of plaintiff’s recovery."  
Burrell
, 176 Ill. 2d at 174.  Moreover, in certain of the cases, the courts specifically noted that the reasonableness of the fees was not at issue.  In 
Wade
, the reviewing court reversed the trial court’s disallowance of part of the hospital’s lien, citing 
Wheaton
.  However, the reviewing court noted that "[n]either the reasonableness nor the necessity of the private duty nursing services is contested."  
Wade
, 156 Ill. App. 3d at 846; see also 
McMillan
, 115 Ill. App. 3d at 1025 (court noted that no argument had been raised either in the trial court or on appeal that the liens were not properly filed or that the charges were unreasonable).  

Moreover, the limitation on the trial court’s authority in adjudicating liens was called into question by the decision in 
In re Estate of Enloe
, 109 Ill. App. 3d 1089 (1982).  In that case, the trial court had found the hospital’s liens to be in the amount of $11,627.91, the total amount of the bills submitted at trial.  However, the hospital had filed liens only in the amount of $11,043.06.  While finding the liens to be valid, the reviewing court rejected the hospital’s argument, based upon 
O’Donnell
, that the only justification for the trial court’s reduction of the hospital’s lien is if it exceeds one-third of the total amount of the recovery by the injured person, stating as follows:

"It is clear, however, that the reference in the 
O’Donnell
 case to the limitation of the power to reduce the lien assumes that the lien is in fact for at least as much as is awarded under the lien.  The trial court’s finding is against the manifest weight of the evidence and we do not believe the statute limits our power to reduce the award to the amount of charges for liens which were filed."  
Enloe
, 109 Ill. App. 3d at 1093-94. 

Since the cases containing the principle of law relied on by Dr. Phillips do not decide or even address the issue before us in this case, we conclude that the statements contained in those cases limiting the authority of the trial court to reduce the amount of a lien are 
dicta
 insofar as the present case is concerned and are not binding on the decision we reach on the issue before us in this case.  

We conclude, therefore, that under the clear language of section 1 of the Act a trial court has the authority to reduce the amount of a lien under the Act on the basis that the physician’s charges, claimed via the lien, are unreasonable.  We are cognizant of the argument that the disallowance of a lien under those circumstances could result in a double recovery or an unjust enrichment to the plaintiff.  We note that, in 
Wade
, the reviewing court held that it would be unconscionable to permit the plaintiff to receive free medical care and then allow him to recover damages for medical services from the tortfeasor and pocket the "windfall."  
Wade
, 156 Ill. App. 3d at 848; see also 
Memedovic v. Chicago Transit Authority
, 214 Ill. App. 3d 957, 959 (1991).  However, as we pointed out earlier, the 
Wade
 court noted that no issue as to the reasonableness of the charges had been raised in that case, nor was there any issue as to reasonableness raised in 
Memedovic
.  In any event, we may not ignore the plain language of the statute.  If, under the statute as written, there exists the danger of such an unintended double recovery or unjust enrichment for the plaintiffs in such cases, then the legislature must act to conform the statute to its true intention.

Having determined that the trial court had the authority to make a determination as to the reasonableness of Dr. Phillips’s charges, we now must determine if the trial court’s reduction of the amount of Dr. Phillips’s lien was proper under the circumstances of this case.  

Dr. Phillips contends that because he had a written agreement with the plaintiff and the final amount in his bill did not exceed the amount set forth in that agreement the trial court had no authority to reduce his lien.  
Cf.
 
In re Marriage of Angiuli
, 134 Ill. App. 3d 417, 424 (1985) (where an attorney and client have an express contract for compensation, it will control in the absence of unconscionability or other contractual impropriety).  However, a comparison between attorneys and physicians for lien claim purposes reveals that they are treated differently.  Under the Attorneys Lien Act (770 ILCS 5/0.01 
et seq.
 (West 1996)), attorneys are entitled to a lien "for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee ***."  In the case of physicians, the Act makes no provision for an agreement between the patient and the physician as a substitute for "reasonable charges."  Therefore, even though there is a written agreement between Dr. Phillips and the plaintiff in this case, for purposes of adjudicating his lien, Dr. Phillips bears the burden of proving that his charges are reasonable.

Dr. Phillips then contends that the trial court's determination that his charges were unreasonable was against the manifest weight of the evidence.  He argues that the trial court erred in relying on the opinion testimony of Dr. Martinez, since his opinion as to the reasonableness of Dr. Phillips’s charges was based on rates charged in a setting different from Dr. Phillips's practice.  

It is the province of the trial court as the trier of fact to determine the qualifications and credibility of expert witnesses, and a court of review cannot substitute its judgment on these matters unless the trial court’s findings are against the manifest weight of the evidence.  
La Salle National Trust, N.A. v. Village of Mettawa
, 249 Ill. App. 3d 550, 568 (1993).  In this case, Dr. Martinez testified that he was board certified in nuclear medicine and that he was the director of nuclear medicine at Lutheran General Hospital and familiar with how the charges were arrived at for such services as performed by Dr. Phillips.  Therefore, the trial court did not err in allowing Dr. Martinez to testify as an expert witness in this case.    

However, the weight of an expert’s testimony must be measured by the reasons given therefor and the facts marshaled in support thereof, and an expert’s opinion is entitled to little weight where a factual basis is lacking.  
First National Bank v. Village of Mount Prospect
, 197 Ill. App. 3d 855, 862 (1990); 
St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.
, 12 Ill. App. 3d 165.  The weight to be afforded a witness’s testimony is a matter for the trier of fact based on the assessments made at trial, and this assessment is not to be disturbed on appeal absent an abuse of discretion.  
Tsai v. Kaniok
, 185 Ill. App. 3d 602, 606 (1989).

In 
Majid v. Stubblefield
, 226 Ill. App. 3d 637 (1992), the court cited with approval the holding in 
Victory Memorial Hospital v. Rice
, 143 Ill. App. 3d 621, 624-25 (1986), that when a hospital seeks to establish that its charges are reasonable the hospital must prove its charges are the usual and customary charges for that particular hospital and that they are comparable to the charges of other area hospitals.  
Majid
, 226 Ill. App. 3d at 642.  While 
Victory Memorial Hospital
 concerned hospital charges, 
Majid
 extended its holding to physicians’ fees as well.  
Majid
, 226 Ill. App. 3d at 642.

Dr. Martinez testified that he had never been in private practice in the area of nuclear medicine.  His testimony as to the usual and customary charges for the types of studies performed by Dr. Phillips in this case was largely confined to a hospital setting.  While he did refer to fees charged for these types of services by a colleague in private practice, the testimony was vague and insufficiently detailed to allow a proper comparison between Dr. Phillips and the unnamed colleague.  According to Dr. Martinez’s testimony, the unnamed colleague informed him of the range of charges for these types of studies "in his area."  There is no indication in the record as to what "his area" refers, and, therefore, there is  no indication that it is the same geographical area in which Dr. Phillips practices, as required.  See 
Tsai
, 185 Ill. App. 3d at 605.  Finally, Dr. Martinez acknowledged that he had no knowledge from his own experience as to how such charges would differ between a private physician’s office and a hospital.

A court of review should not disturb a trial court’s findings and substitute its own opinion unless the findings are against the manifest weight of the evidence.  
Majid
, 226 Ill. App. 3d at 643.  We observe that in overruling Dr. Phillips’s objection to the testimony the trial  court specifically noted that Dr. Martinez was relying on his familiarity with the charges at Lutheran General Hospital and with what other hospitals charge.  As Dr. Martinez’s testimony was based on a comparison between what a hospital charged and what a private physician charged and given that his testimony with regard to what a private physician would charge was vague and unreliable, we conclude that trial court erred in giving any weight to Dr. Martinez’s testimony as to the reasonableness of Dr. Phillips’s charges.  

On the other hand, Dr. Phillips’s testimony as to the reasonableness of his fees, while not overwhelming, stands nonetheless uncontested.   This is unlike the situation in 
Majid
, where the reviewing court found no basis for the trial court’s finding that the physician was entitled to $100 for the defendant’s office visit on the basis that the physician had offered no evidence as to the reasonableness of his office consultation fee and the defendant’s expert had testified that the $75 the defendant had paid for the visit was a reasonable fee.  
Majid
, 226 Ill. App. 3d at 644.  In that case, the only testimony presented by the physician on the issue of the office consultation fee was from the physician’s office manager, who testified that $100 was the usual and customary charge in that area; however, the reviewing court noted that the office manager had not inquired of other doctors in the area as to what their office consultation fees would be.  
Majid
, 226 Ill. App. 3d at 643.  

In contrast, in this case, Dr. Phillips testified as to how he determined his charges and that he believed his charges to be reasonable.  In the absence of any credible evidence contradicting his testimony, we conclude that the trial court’s finding that Dr. Phillips’s charges were unreasonable was against the manifest weight of the evidence.

For all of the foregoing reasons, the order adjudicating Dr. Phillips’s lien in the amount of $2,509 is reversed, and this cause is remanded with directions to enter an order adjudicating Dr. Phillips’s lien in the amount of $8,140.  

Reversed and remanded with directions.         

McLAREN and RAPP, JJ., concur.