# Illinois Official Reports

## Appellate Court

---

### *Wolf v. Toolie*, 2014 IL App (1st) 132243

---

| | |
|---|---|
| Appellate Court Caption | KIMBERLY WOLF, Plaintiff-Appellant, v. BERNARD TOOLIE, Defendant (Tacori Brooks and Dawanna Johnson, Plaintiffs; The County of Cook *ex rel.* John H. Stroger, Jr., Hospital of Cook County, Appellee).–NORA LARMENA, Plaintiff-Appellee, v. JAMES CAMPBELL, Defendant (The County of Cook *ex rel.* John H. Stroger, Jr., Hospital of Cook County, Appellant). |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-13-2243, 1-13-2552 cons. |
| Filed | September 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In personal injury actions, attorney fees and litigation costs should be deducted from plaintiff's total recovery before calculating the amount to be distributed to health care services providers pursuant to the Health Care Services Lien Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 11-L-6267, 11-L-008513; the Hon. Randye Kogan and the Hon. Vanessa Hopkins, Judges, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on
Appeal

Douglas W. Graham, of Chicago, for appellant.

Jeffrey M. Brown, of Dinizulu Law Group, of Chicago, for appellee.

Anita M. Alvarez, State's Attorney, of Chicago (Daniel Gallagher, Jeffrey McCutchan, Kent S. Ray, and Lauren Klein, Assistant State's Attorneys, of counsel), for County of Cook.

Richard R. King and Sherri DeVito, both of Chicago, for *amicus curiae* Illinois State Medical Society.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Palmer and Justice Gordon concurred in the judgment and opinion.

**OPINION**

¶ 1    The present appeal involves two separate cases, both stemming from separate motor vehicle accidents in which plaintiffs suffered personal injuries. Plaintiffs received medical care at John H. Stroger, Jr., Hospital of Cook County (Stroger). The County of Cook (Cook County) filed liens against plaintiffs for unpaid medical bills on behalf of the hospital, pursuant to the Health Care Services Lien Act (Act) (770 ILCS 23/1 *et seq.* (West 2012)). Subsequently, each plaintiff filed a lawsuit against the other parties involved in the accidents and recovered a settlement. Each plaintiff then filed a motion to adjudicate her health care services liens, arguing that the attorney fees and litigation costs should be deducted from the total recovery before calculating the amount to be distributed to the health care services providers. The central question on appeal is whether attorney fees and litigation costs should be deducted from a plaintiff's total recovery prior to calculating the amount to be distributed to health care professionals and providers pursuant to the Act. The two circuit court judges decided this question differently: in case No. 1-13-2243, the circuit court did not deduct attorney fees and litigation costs from the plaintiff's total recovery before calculating the amount to be awarded to Stroger for its lien against the plaintiff; in case No. 1-13-2552, the circuit court did deduct attorney fees and litigation costs from the plaintiff's total recovery before calculating the amount to be awarded to Stroger for its lien against the plaintiff. Timely appeals were filed in both cases and this court subsequently allowed a motion to consolidate the two cases on appeal due to the identical legal issue presented.

¶ 2    The Act provides that health care professionals and health care providers that render any service in the treatment, care, or maintenance of an injured person "shall have a lien upon all

- 2 -

claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person." 770 ILCS 23/10(a) (West 2012). The total amount of liens under the Act is limited and "shall not exceed 40% of the verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person on his or her claim or right of action." *Id*. However, the Act also provides that "[t]he statutory limitations under this Section may be waived or otherwise reduced *only by the lienholder*." (Emphasis added). 770 ILCS 23/10(c) (West 2012).

¶ 3    The Act further creates a structure to divide the liens between health care professionals and health care providers, dictating that if the total amount of liens under the Act meets or exceeds 40% of the "verdict, judgment, award, settlement, or compromise," then neither the liens of the health care professionals nor the liens of the health care providers shall exceed 20% of the "verdict, judgment, award, settlement, or compromise." 770 ILCS 23/10(c) (West 2012). No individual health care professional or health care provider may receive more than one-third of the "verdict, judgment, award, settlement, or compromise." *Id*. However, the Act also provides:

> "[H]ealth care services liens *shall be satisfied to the extent possible* for all health care professionals and health care providers by reallocating the amount unused within the aggregate total limitation of 40% for all health care services liens under this Act; and provided further that the amounts of liens under paragraphs (1) and (2) are subject to the one-third limitation under this subsection." (Emphasis added.) *Id*.

¶ 4    The Act also provides that when the total amount of liens under the Act exceeds 40% of the "verdict, judgment, award, settlement, or compromise," attorney liens under the Attorneys Lien Act (770 ILCS 5/0.01 *et seq*. (West 2012)) "shall not exceed 30% of the verdict, judgment, award, settlement, or compromise." 770 ILCS 23/10(c) (West 2012).

¶ 5    Similarly to the Act, the Attorneys Lien Act provides:

> "Attorneys at law shall have a lien upon all claims, demands and causes of action *** for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action, *plus costs and expenses*." (Emphasis added.) 770 ILCS 5/1 (West 2012).

In conjunction with the Act, the Attorneys Lien Act further states:

> "In the case of a claim, demand, or cause of action with respect to which the total amount of all liens under the Health Care Services Lien Act meets or exceeds 40% of the sum paid or due the injured person, the total amount of all liens under this [Attorneys Lien] Act shall not exceed 30% of the sum paid or due the injured person." *Id*.

¶ 6    The procedural facts from the circuit courts' decisions disclose the following. Kimberly Wolf, plaintiff in case No. 1-13-2243, was a passenger in an automobile driven by Bernard Toolie that was involved in a one-vehicle accident on March 21, 2010.[1] She received

---

[1]Wolf's complaint against Toolie was not included in the record on appeal, so the few details from the accident are taken from her opening appellate brief.

- 3 -

outpatient treatment for her injuries at Stroger and incurred medical bills totaling $5,093.10. Wolf filed suit against Toolie and ultimately recovered a settlement of $27,000.

¶ 7    On April 28, 2010, Cook County issued a notice of lien against Wolf on behalf of Stroger pursuant to the Act.

¶ 8    On April 18, 2013, Wolf filed an amended motion for adjudication of medical liens in which she indicated that, in addition to the lien served against her by Cook County on behalf of Stroger,[2] she had health care liens totaling $12,257.18 from four separate health care professionals: Affiliated Health Care Associates, Bassam Osman, M.D., Lake Shore Open MRI, and Richard S. Conen, D.D.S. Wolf also alleged that her attorney fees for litigating the suit totaled $8,100 and costs of the lawsuit totaled $751.26. In the motion, Wolf argued that, pursuant to an appellate court decision from the Fifth District, *Stanton v. Rea*, 2012 IL App (5th) 110187, any health care services liens should be adjudicated on the net amount remaining after her attorney fees and litigation costs are subtracted from her total recovery. In applying the *Stanton* calculations, Wolf first subtracted the $8,100 in attorney fees and the $751.26 for the costs of the lawsuit from her total recovery of $27,000, leaving a new subtotal of $18,148.74. Wolf then argued that the health care lien claimants were entitled to 40% of the $18,148.74 subtotal to be split evenly between the categories, 20% of the subtotal going to health care professionals and 20% to health care providers; therefore, the health care professionals were entitled to $3,629.75, divided *pro rata*, and Stroger, as the sole health care provider, was entitled to $3,629.75.

¶ 9    On April 22, 2013, Cook County filed a response to Wolf's amended motion, arguing that *Stanton* did not apply. More specifically, Cook County argued that because the total amount of health care liens, $17,350.28, exceeded 40% of Wolf's total recovery of $27,000, the health care professionals were entitled to a total of 20% of the $27,000 recovery, divided *pro rata*, and Stroger as the sole health care provider was entitled to a total of 20% of the $27,000 recovery, or $5,400. Because 20% of Wolf's total recovery, or $5,400, exceeded Stroger's $5,093.10 lien amount against Wolf, Cook County argued that Stroger was entitled to the full amount of its lien.

¶ 10    On April 23, 2013, the circuit court entered an order adjudicating the liens of the health care professionals to an amount of $3,629.75 and dismissed the case with prejudice as to those liens. The circuit court also retained jurisdiction to adjudicate Stroger's lien.

¶ 11    On June 17, 2013, in a written order, the circuit court concluded that Stroger should receive the full amount of its $5,093.10 lien. The court observed that the plaintiff in *Stanton* received nothing from her judgment and the *Stanton* court held that a plaintiff should receive 30% of the total amount of a settlement. *Stanton*, 2012 IL App (5th) 110187, ¶ 17. The circuit court, however, reasoned that "[u]nder the limited facts of this case where the calculations show that Plaintiff would receive money, even after her attorney received 30% of the settlement, costs were paid, and Stroger Hospital received 20% of the settlement, the *Stanton* Court's objective is satisfied."

¶ 12    On July 10, 2013, Wolf timely appealed from the circuit court's June 2013 order.

---

[2]The amended motion to adjudicate medical liens only reflected a lien from Stroger totaling $4,908.52. Subsequent documentation reflects the total of $5,093.10, and Wolf is not challenging that amount on appeal.

¶ 13        Nora Larmena, plaintiff in case No. 1-13-2552, was the driver of a vehicle when she was involved in a motor vehicle accident on August 11, 2006. She received treatment for her injuries at Stroger and incurred medical bills, of which $4,185.60 remained unpaid. On August 11, 2011, Larmena filed suit against defendant James Campbell, the driver of the other vehicle, alleging that he proximately caused her injuries. On March 12, 2013, the lawsuit resulted in a settlement of $24,110.60, in favor of Larmena.

¶ 14        On August 10, 2009, and July 15, 2010, Cook County issued notices of lien to Larmena on behalf of Stroger pursuant to the Act.

¶ 15        On May 15, 2013, Larmena filed a motion to adjudicate and/or quash any and all liens. She alleged that she had health care liens totaling $23,734.24, including liens from Stroger, Pain Net Medical Group, Chinatown Rehabilitation, Preferred Open MRI, and Jackson Park Hospital; attorney fees totaling $7,233.18, or 30% of her $24,110.60 recovery; and court costs totaling $3,480.92. Larmena argued that, pursuant to *Stanton*, the health care services liens should be adjudicated on the net amount remaining after her attorney fees and litigation costs are subtracted from her total recovery. In applying the *Stanton* calculations, Larmena first subtracted the $7,233.18 in attorney fees and the $3,480.92 for the costs of the lawsuit from her total recovery of $24,110.60, leaving a new subtotal of $13,396.50. Larmena then argued that the health care lien claimants were entitled to 40% of the $13,396.50 subtotal to be split evenly between the categories, 20% of the subtotal going to health care professionals and 20% to health care providers. Therefore, Larmena concluded that the health care professionals were entitled to $2,673.90, divided *pro rata*, and the two health care providers, Stroger and Jackson Park Hospital, were each entitled to half of the $2,673.90, or $1,336.95.

¶ 16        On June 20, 2013, the circuit court entered a written order in which the liens of Jackson Park Hospital and Chinatown Rehabilitation were adjudicated to zero.

¶ 17        On June 25, 2013, Cook County filed a response to Larmena's motion, indicating that its lien amount against Larmena was $4,185.60. Cook County argued that, as the only lienholder to perfect its lien, it was entitled to up to one-third of Larmena's total $24,110.60 recovery, or $8,036.86, pursuant to the Act. Cook County concluded that because Stroger's lien was less than the $8,036.86 one-third of Larmena's total recovery, Stroger was entitled to its full lien amount of $4,185.60. In the alternative, Cook County argued that even if the other remaining lienholders perfected their liens, they were health care professionals entitled to 20% of the recovery, divided *pro rata*, and Stroger would still be entitled to 20% of Larmena's total recovery of $24,110.60, or $4,822.12, as the sole health care provider. Because 20% of Larmena's total recovery, or $4,822.12, exceeded Stroger's $4,185.60 lien amount against Larmena, Cook County argued that Stroger was still entitled to the full amount of its lien. Cook County also claimed that *Stanton* did not apply.

¶ 18        On July 11, 2013, in a written order, the circuit court found that the *Stanton* lien calculation was the proper methodology and that, after attorney fees and costs were deducted from a plaintiff's recovery, health care liens should be calculated from the resulting subtotal. The court awarded Stroger $2,673.90 of its $4,185.60 lien, or 20% of the $13,396.50 subtotal after deducting plaintiff's attorney fees and litigation costs from the total recovery of $24,110.60.

¶ 19        On August 5, 2013, Cook County timely appealed from the circuit court's July 2013 order on behalf of Stroger.

¶ 20        On appeal, the central question is whether, under the Act, health care services liens are to be calculated from the plaintiff's total recovery or from the subtotal resulting after attorney

fees and costs have been subtracted from the total recovery. In addition to the briefs filed by the parties, we also allowed an *amicus curiae* brief to be filed by the Illinois State Medical Society and the Illinois Hospital Association in support of Stroger.

¶ 21   We review questions of statutory interpretation *de novo*. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008). "The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature." *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). The language of the statute is the best indication of the legislature's intent and therefore must be given its plain and ordinary meaning. *Id*. at 553. If the language is unambiguous, the statute must be given effect without the use of other aids of construction. *Id*. We cannot "depart from the plain language of the statute by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Id*. at 567-68. A court should not consider words and phrases in isolation, but instead should interpret each word and phrase in light of the statute as a whole. *Id*. at 553. "Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous." *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26. Statutes should be interpreted as a whole, "meaning different sections of the same statute should be considered in reference to one another so that they are given harmonious effect." *Jayko v. Fraczek*, 2012 IL App (1st) 103665, ¶ 14.

¶ 22   According to the plain language of the Act and the Attorneys Lien Act, if the total amount of health care liens exceeds 40% of plaintiff's verdict, judgment, award, settlement, or compromise, then attorney liens are limited to 30% of the verdict, judgment, award, settlement, or compromise. Contrary to the interpretation plaintiffs are suggesting, nothing in the language of the Act or the Attorneys Lien Act suggests that healthcare liens must be calculated from the net amount of a plaintiff's verdict, judgment, award, settlement, or compromise, after costs and attorneys fees have been deducted. Statutes are to be read together in harmony. *Jayko*, 2012 IL App (1st) 103665, ¶ 14. We note that both the Act and the Attorneys Lien Act use the exact same language in regard to the percentage limitations for both health care liens and attorney liens. The total amount of liens under the Act "shall not exceed" 40% of the "verdict, judgment, award, settlement, or compromise." 770 ILCS 23/10(a) (West 2012). If the total amount of liens under the Act exceeds 40% of the "verdict, judgment, award, settlement, or compromise," then attorney liens "shall not exceed" 30% of the "verdict, judgment, award, settlement, or compromise." 770 ILCS 5/1 (West 2012); 770 ILCS 23/10(c) (West 2012). The words "verdict, judgment, award, settlement, [and] compromise" are not defined by the Act or the Attorneys Lien Act; however, the consistent use of terminology shows that the legislature intended health care liens and attorney liens to be calculated from the same total. Interpreting the statute as plaintiffs suggest would require us to read into the Act and the Attorneys Lien Act an exception that was not expressed by the legislature, which we cannot do. *Krautsack*, 223 Ill. 2d at 567-68.

¶ 23   Moreover, the definitions of these words do not alter our understanding of the statutes. According to Black's Law Dictionary: "verdict" is defined as a "jury's finding or decision on the factual issue of a case" or "in a nonjury trial, a judge's resolution of the issues of a case" (Black's Law Dictionary 1554 (7th ed. 1999)); "judgment" is defined as a "court's final determination of the rights and obligations of the parties in a case" (*id.* at 846); "award" is defined as a "final judgment or decision, esp. one by an arbitrator or by a jury assessing damages" (*id.* at 132); "settlement" is defined as an "agreement ending a dispute or lawsuit" (*id.* at 1377); and "compromise" is defined as an "agreement between two or more persons to

- 6 -

settle matters in dispute between them" (*id.* at 281). None of the words used in the statute suggest that the legislature intended a health care lien to be calculated based on the "verdict, judgment, award, settlement, or compromise" after the subtraction of attorney fees and costs. The statute simply says that the health care lien total may not exceed 40% of the "verdict, judgment, award, settlement, or compromise."

¶ 24    The Act expressly provides that health care liens "shall be satisfied to the extent possible" and that the statutory limitations may be reduced or waived "only by the lienholder." 770 ILCS 23/10(c) (West 2012). This shows that the legislature intended for health care providers to receive as much of their liens as possible within the limitations of the statute. See *In re Estate of Wade*, 156 Ill. App. 3d 844, 848 (1987) (finding that, under the Hospital Lien Act (Ill. Rev. Stat. 1985, ch. 82, ¶ 97),[3] once a hospital lien was established, "the trial court has no discretion to reduce the amount of the lien"). As a court, we are limited by the rules of statutory construction and cannot add words to a statute to change its meaning. *Hyster Co. v. Industrial Comm'n*, 125 Ill. App. 3d 867, 869 (1984) (citing *Harvey Firemen's Ass'n v. City of Harvey*, 75 Ill. 2d 358, 363 (1979)). Neither can we read into the statutes an exception that was not expressed by the legislature. *Krautsack*, 223 Ill. 2d at 567-68. Here, the plain language of the Act and the Attorneys Lien Act is unambiguous and the language must therefore be given effect without other aids of statutory construction. *Id.* at 553. Based on the plain language of the Act and the Attorneys Lien Act, we hold that both health care liens and attorney liens are calculated from the same total: they must be calculated based on an injured plaintiff's total recovery resulting from the plaintiff's claims or causes of action based on the injury.

¶ 25    Our interpretation of the statute is supported by case law. Our supreme court has held that shifting attorney fees to a health care lienholder is not permitted. See *Maynard v. Parker*, 75 Ill. 2d 73, 75-76 (1979); *Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261, 271 (2011). In *Maynard*, the plaintiff was injured in an automobile accident and filed suit to recover damages for the injuries he sustained. *Maynard*, 75 Ill. 2d at 74; *Maynard v. Parker*, 54 Ill. App. 3d 141, 142 (1977). The hospital's bill for services in treating the plaintiff totaled $11,027.96 and the hospital served a notice of lien on the plaintiff in that amount pursuant to the Hospital Lien Act. *Maynard*, 75 Ill. 2d at 74. The plaintiff's suit was settled for $37,500 and the plaintiff filed a petition to adjudicate the rights of the parties. *Id.* The circuit court ordered the hospital to pay the plaintiff's attorney one-third of the litigation costs incurred and one-third of the amount claimed in its lien, or a total of $3,881.46 of its $11,027.96 lien. *Id.* The hospital appealed the circuit court decision, the appellate court reversed, and our supreme court granted the plaintiff's petition for leave to appeal. *Id.*

¶ 26    On appeal, the plaintiff argued that the circuit court correctly ordered the hospital to pay a portion of his attorney fees and costs pursuant to the common fund doctrine. *Id.* at 74-75. The common fund doctrine provides "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. [Citation.] Underlying the doctrine is the equitable concept that the beneficiaries of a fund will be unjustly enriched by the attorney's services unless they contribute to the costs of litigation." (Internal quotation marks omitted.) *Wendling*, 242 Ill. 2d at 265. The *Maynard* court however disagreed with the plaintiff, observing that the "plaintiff's

---

[3]The Hospital Lien Act was one of the eight statutes that were repealed with the enactment of the Health Care Services Lien Act. See 770 ILCS 23/35 (West 2012).

- 7 -

liability to the hospital was not dependent upon the creation of a fund; plaintiff was a debtor obligated to pay for the services rendered by the hospital out of any resources which might become available to him." *Maynard*, 75 Ill. 2d at 75. The court also noted that the Hospital Lien Act limited the hospital's recovery to, at most, one-third of the plaintiff's recovery. *Id*. The court concluded that the common fund doctrine did not apply to the case before it. *Id*. at 75-76.

¶ 27    In *Wendling*, the plaintiffs were injured in separate motor vehicle accidents and treated by hospitals owned by the defendant. *Wendling*, 242 Ill. 2d at 264. The hospitals filed health care liens under the Act. *Id*. Both plaintiffs settled and filed petitions to adjudicate the liens and argued that, pursuant to the common fund doctrine, the plaintiffs' attorneys were entitled to additional attorney fees equal to one-third of the amount of the hospitals' liens, to be paid by the hospitals. *Id*. The circuit court agreed, finding that the plaintiffs' attorneys were entitled to 30% of the plaintiffs' total recovery and one-third of the amount of the hospitals' liens, and ordered the hospitals' share of the recovery be reduced by one-third to reflect the hospitals' share of the legal fees. *Id*. The appellate court affirmed and the hospitals appealed. *Id*.

¶ 28    Relying on *Maynard*, the supreme court explained:

"Illinois courts have never applied the common fund doctrine to a creditor-debtor relationship, such as the one between the Hospitals and the plaintiffs in the instant case. In fact, in [*Maynard*], this court expressly held that the doctrine was inapplicable to a hospital holding a statutory lien. *** In contrast to other 'common fund' cases, where the beneficiaries of the fund would not be paid absent the creation of the fund, the hospital's recovery of its charges did not depend on the creation of the fund. '[P]laintiff was a debtor obligated to pay for the services rendered by the hospital out of any resources which might become available to him.' [Citation.] *** [The *Maynard*] court further noted that, unlike in other common fund cases, the amount of the hospital's lien was limited by statute to a certain percentage of the plaintiff's recovery. [Citation.] Under those circumstances, the hospital was not unjustly enriched by the attorney's services, and, thus, was not required to contribute to the costs of litigation." *Wendling*, 242 Ill. 2d at 265-66.

The court concluded that, in the case before it, the attorneys obtained funds for the plaintiffs' benefit, not for the benefit of a class, and did so regardless of the hospitals' interests. *Id*. at 271. Therefore, the court held that the common fund doctrine did not apply to hospitals attempting to recover health care liens under the Act. *Id*. at 263.

¶ 29    Here, by requesting that the attorney lien be subtracted from a plaintiff's total recovery before the health care services liens are calculated, plaintiffs are requesting to shift their attorney fees and costs in part onto the health care services lienholders. Because the Illinois Supreme Court has expressly disallowed the shifting of attorney fees and costs onto health care services lienholders, plaintiffs' interpretation of the Act is incorrect.

¶ 30    Larmena also relies on section 40 of the Act to support her formula for lien calculation. Section 40 provides: "Nothing in this Act shall affect the priority of any attorney's lien under the Attorneys Lien Act." 770 ILCS 23/40 (West 2012). Although the language quoted directly above appears in the Act, we do not find that this language suggests or requires that an attorney lien should be subtracted from a plaintiff's recovery before a health care lien is calculated. Stroger suggests that neither that Act nor the Attorneys Lien Act provide that attorney liens are superior or inferior to health care services liens. However, we need not interpret the priority of

any lien or whether one is superior or inferior to the other in this case because the plain language of the Act and the Attorneys Lien Act divide up 100% of plaintiff's total recovery so that all interests receive payment in the percentages provided by the legislature.

¶ 31    The Fifth District recently considered the same question presently before this court in *Stanton v. Rea*, 2012 IL App (5th) 110187. In *Stanton*, the plaintiff was injured in an automobile accident and incurred hospital bills in excess of $4,000. *Id*. ¶ 3. The plaintiff filed suit against the drivers of the two other cars for injuries she sustained in the accident, but one was uninsured, so the case proceeded against the insured defendant only. *Id*. After a jury trial, the court granted the plaintiff's motion for a directed verdict against the defendant on the issue of liability. *Id*. ¶ 4. The jury then awarded damages to the plaintiff in the amount of $13,506.80 and the court entered a judgment in that amount, plus $3,919.79 in costs. *Id*. Ultimately, a check was issued by the defendant's insurance company in the amount of $14,520.86. *Id*. ¶ 5. The plaintiff filed a petition to adjudicate liens and the court divided up the funds, applying 30% of the verdict to attorney fees, 40% of the verdict to the payment of the plaintiff's medical liens, and the court ordered the plaintiff to pay the costs in acquiring the verdict. *Id*. Therefore, after the distribution, the plaintiff was left with nothing. *Id*. ¶ 6.

¶ 32    The plaintiff appealed, arguing that the circuit court erred in making her pay all the costs of acquiring the verdict and incorrectly interpreted the Act. *Id*. ¶ 10. "According to [the] plaintiff, the only clear and fair interpretation is to begin computation after expenses have been deducted from the amount of the original verdict." *Id*. The Fifth District agreed with the plaintiff and began by distinguishing *Wendling* from the case before it, noting that *Wendling* dealt with attorney fees, while in *Stanton* the court was dealing with the costs associated with acquiring a verdict. *Stanton*, 2012 IL App (5th) 110187, ¶ 13. The *Stanton* court further explained that the common fund doctrine had no application and based its analysis solely on interpretation of the Act. *Id*. The *Stanton* court then reasoned:

> "In the instant case, the attorney's lien was reduced to 30%, down from the one-third contingency fee agreed to by plaintiff, and lienholders under the Act were limited to 40% of the judgment. However, because of the high costs it took to secure a judgment, there was literally no money left for plaintiff. The costs of the litigation simply wiped out plaintiff's 30%. After a careful reading of the Act, we agree this was not the intention of our General Assembly. The intent of the law is clear that plaintiff should receive 30% of the amount of the settlement for her injuries after all liens, expenses, and medical bills have been paid.
>
> In order to ensure that plaintiff receives 30% of the judgment as intended by the Act, it is necessary that computation of the 40% does not begin until costs associated with bringing the case to trial and securing payment of the judgment have been deducted from the amount of the original verdict. In the instant case, the trial court should have begun its calculations of 40% for the lienholders after payment of attorney fees and costs necessary in securing the judgment." *Id*. ¶¶ 17-18.

The Fifth District therefore reversed the judgment of the circuit court and remanded the cause for further proceedings.

¶ 33    Nonetheless, for the reasons stated above, we find that a circuit court may not subtract attorney fees and costs from a plaintiff's recovery before calculating health care services liens from the resulting subtotal; the calculation of a health care services lien must be calculated

from plaintiff's total recovery. To the extent that the Fifth District in *Stanton* suggests otherwise, we disagree.

¶ 34    Larmena also contends that Stroger did not perfect its lien and is not entitled to any recovery. Wolf has conceded that Stroger perfected its lien against her. Specifically, Larmena argues that Stroger did not specify the name of the party alleged to be liable or the address of the health care provider, and that Stroger did not serve the liens on Larmena as required by the Act. Stroger responds that its lien was perfected and that, regardless, strict compliance was not necessary once Larmena filed a motion to adjudicate the lien, relying on *Cirrincione v. Johnson*, 287 Ill. App. 3d 683 (1997), *aff'd in part& rev'd in part on other grounds*, 184 Ill. 2d 109 (1998).

¶ 35    Section 10(b) of the Act states that "[t]he lien shall include a written notice containing the name and address of the injured person, the date of the injury, the name and address of the health care professional or health care provider, and the name of the party alleged to be liable to make compensation to the injured person for the injuries received." 770 ILCS 23/10(b) (West 2012). The Act also provides that the lien should be served on the injured person and that service "shall be made by registered or certified mail or in person." *Id.*

¶ 36    Here, the record contains two notices of lien from Stroger. Both notices state that Stroger provided services to Larmena, who was injured "on or about June 06, 2006," and list an address for Larmena. However, the first notice, dated August 10, 2009, does not list an address for Stroger and both notices state only that the "parties alleged to be liable to make compensation for the injuries sustained by the Patient are unknown individual[s]." In addition, the record does not show that Larmena herself was served with either notice of lien. The August 2009 notice was received and signed for by someone at the office of Bruce Farrell Dorn & Associates in August 2009; however, there is no signature to indicate Larmena received the notice and the envelope addressed to Larmena is stamped as having an insufficient address. The second notice, dated July 15, 2010, was received and signed for by someone at the Dinizulu Law Group, but there is no signature to indicate Larmena received the notice and the envelope addressed to Larmena is stamped "Return to Sender."

¶ 37    Nonetheless, in *Cirrincione*, the First District found a physician's lien was valid despite technical deficiencies where the injured party's lawyer had acknowledged the lien. *Cirrincione*, 287 Ill. App. 3d at 687-88. There, the physician's lien failed to comply with the requirements of the Physicians' Lien Act (770 ILCS 80/1 (West 1994))[4] because it failed to include, in part: the injured party's address, the date of the injury, and the name of the party or parties liable for the injury. The supreme court affirmed the appellate court's holding that the lien was valid. *Cirrincione*, 184 Ill. 2d at 113. The supreme court noted:

"'The doctrine of strict construction was never meant to be applied as a pitfall to the unwary, in good faith pursuing the path marked by the statute, nor as an ambuscade from which an adversary can overwhelm him for an immaterial misstep. Its function is to preserve the substantial rights of those against whom the remedy offered by statute is directed, and it is never employed otherwise.' [Citation.]

In this case, the rights of the parties have not been prejudiced by technical difficulties in the lien. Both [the injured party's attorney] and [the injured party] had actual notice, and those not served with the lien are not parties to this action.

_____
[4]See 770 ILCS 23/35 (West 2012).

Furthermore, any missing information was already known by [the injured party's attorney]. In short, the errors were not material. To invalidate the lien due to the instant technicalities would serve no purpose and would worship form over substance. It would also be contrary to the purpose of the lien, which is to lessen the financial burden on those who treat nonpaying accident victims." *Id*. at 113-14.

In the present case, even if Stroger's lien did not strictly comply with the Act's requirements, it substantially complied. In addition, Larmena had actual notice of Stroger's lien. In Larmena's motion to adjudicate and/or quash any and all liens, she stated that a claim had been asserted by Stroger for a lien of $5,378.40.[5] Therefore Larmena's rights were not prejudiced by any deficiencies in the lien. *Id*. Larmena argues that *Cirrincione* should not apply because it was decided under a different, old act and because the underlying facts in *Cirrincione* were different. However, Larmena fails to cite any authority to support her argument. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (the argument section of the party's brief "shall contain the contentions of the [party] and the reasons therefor, with citation of the authorities *** relied on"). In addition, although *Cirrincione* was decided under the Physicians' Lien Act, we note that the lien requirements under the Physicians' Lien Act are virtually identical to the lien requirements under the Act. Compare 770 ILCS 23/10(b) (West 2012); 770 ILCS 80/1 (West 1994). We find no reason to conclude that the holding in *Cirrincione* would not be applicable under the current Act. Therefore, we find that Stroger's lien was valid.

¶ 38    As a final matter, Stroger claims that, based on the record, it is entitled to its full lien in case No. 1-13-2552. Stroger argues that no other provider perfected a lien, that it is entitled to up to one-third of the recovery, and, because its total lien is less than one-third of Larmena's recovery, it is entitled to its full lien of $4,185.60. See 770 ILCS 23/10 (West 2012) ("the amounts of liens *** are subject to the one-third limitation under this subsection"). Larmena does not respond to this particular argument. See Ill. S. Ct. R. 341(h) (eff. July 1, 2008) (the argument section of the party's brief "shall contain the contentions of the [party] and the reasons therefor, with citation of the authorities *** relied on"). Therefore, we reverse and remand this cause to the circuit court with instructions to award Stroger its total lien, in the amount of $4,185.60.

¶ 39    Based on the foregoing, we conclude that the circuit court in case No. 1-13-2243 properly awarded Stroger its full lien under the Act. We further conclude that the circuit court in case No. 1-13-2552 erred in calculating Stroger's lien from the subtotal resulting after subtracting attorney fees and costs from Larmena's recovery. Accordingly, we affirm the judgment of the circuit court in case No. 1-13-2243 and reverse and remand the judgment of the circuit court in case No. 1-13-2552 for further proceedings consistent with this opinion.

¶ 40    Affirmed in part and reversed in part; cause remanded.

---

[5]We note that, according to Stroger, Larmena's motion was inaccurate as to its total lien against her. The bills attached to Stroger's notice of lien in the record show that its total lien was $4,185.60.